1   TOMIO B. NARITA (SBN 156576)
    tnarita@snllp.com
2   JEFFREY A. TOPOR (SBN 195545)
    jtopor@snllp.com
3   SIMMONDS & NARITA LLP
    44 Montgomery Street, Suite 3010
4   San Francisco, CA 94104-4816
    Telephone: (415) 283-1000
5   Facsimile:  (415) 352-2625

6   Attorneys for defendant
    Cavalry Portfolio Services, LLC
7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  CORY HORTON, on behalf of          )   CASE NO.  13-CV-00307-JAH (WVG)
    himself and all others similarly   )
12  situated,                          )   **MEMORANDUM OF POINTS AND**
                                       )   **AUTHORITIES IN SUPPORT OF**
13                                      )   **DEFENDANT'S OPPOSITION TO**
                                       )   **MOTION FOR  CLASS**
14              Plaintiff,              )   **CERTIFICATION**
                                       )
15         vs.                          )   Date:    December 1, 2014
                                       )   Time:    2:30 p.m.
16                                      )   Crtrm.:  13B
    CAVALRY PORTFOLIO                   )
17  SERVICES, LLC,                      )   The Honorable John A. Houston
                                       )
18                                      )
                Defendant.              )
19                                      )
                                       )
20  _____)

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

I.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       A.    Standards For Class Certification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       B.    The Motion Should Be Denied Because Horton Has Not Identified
             An Ascertainable Class. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

             1.    No Class Can Be Certified Unless It Is Ascertainable. . . . . . . . . . 4

             2.    The Class Is Not Ascertainable Because Horton Cannot
                   Identify When Cavalry Made A Call. . . . . . . . . . . . . . . . . . . . . 5

             3.    The Class Is Not Ascertainable Because Horton Cannot
                   Identify The Called Parties Who Have TCPA Standing. . . . . . . 7

             4.    The Class Is Not Ascertainable Because There Are Individual
                   Issues Regarding Whether Proposed Class Members Provided
                   Prior Express Consent To Be Called. . . . . . . . . . . . . . . . . . . . 10

       C.    Plaintiff Cannot Satisfy Rule 23(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

             1.    Horton Has Not Shown Numerosity Under 23(a)(1). . . . . . . . . . 16

             2.    Horton Has Not Shown Commonality Under 23(a)(2). . . . . . . . 17

             3.    Horton Is Not An Adequate Class Representative Nor Is
                   His Counsel Adequate Under Rule 23(a)(4). . . . . . . . . . . . . . . 18

       D.    Horton Cannot Meet The Requirements Of Rule 23(b)(3). . . . . . . . . . 22

III.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Agne v. Papa John's Intern., Inc.*
286 F.R.D. 559 (W.D. Wash. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Alberto v. GMRI, Inc.*
252 F.R.D. 652 (E.D. Cal. 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18, 23

*APB Assocs., Inc. v. Bronco's Saloon, Inc.*
297 F.R.D. 302 (E.D. Mich. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ashland Hosp. Corp. v. Service Employees Int'l Union*
708 F.3d 737 (6th Cir. 2013).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Astiana v. Ben & Jerry's Homemade, Inc.*
2014 WL 60097 (N.D. Cal. Jan. 7, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Balthazor v. Central Credit Servs., Inc.*
2012 WL 6725872 (S.D. Fla. Dec. 27, 2012). . . . . . . . . . . . . . . . . . . . . . . . . 24

*Beck v. Maximus, Inc.*
457 F.3d 291 (3d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Beer Distrib. Antitrust Litig.*
188 F.R.D. 549 (N.D. Cal. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Brazil v. Dell Inc.*
585 F. Supp. 2d 1158 (N.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Breslow v. Wells Fargo Bank, N.A.*
755 F.3d 1265 (11th Cir. 2014).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Brown v. Kelly*
609 F.3d 467 (2d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Brown v. Wells Fargo & Co.*
2013 WL 6851068 (D. Minn. Dec. 30, 2013).. . . . . . . . . . . . . . . . . . . . . . . . . 10

*Carrera v. Bayer Corp.*
727 F.3d 300  (3d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 15

*CE Design Ltd. v. King Architectural Metals, Inc.*
637 F.3d 721 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 19

*Chapman v. First Index, Inc.*
2014 WL 840565 (N.D. Ill. Mar. 4, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 24

*Connelly v. Hilton Grand Vacations Co.*
294 F.R.D. 574 (S.D. Cal. 2013).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 23

*Conover v. BYL Collections Servs., LLC*
2012 WL 4363740 (W.D.N.Y. Sept. 21, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Conrad v. General Motors Acceptance Corp.*
283 F.R.D. 326 (N.D. Tex. 2012)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

*Cusano v. Klein*
264 F.3d 936 (9th Cir.2001)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

*Deitz v. Comcast Corp.*
2007 WL 2015440 (N.D. Cal. Jul. 11, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

*Donaca v. Dish Network, LLC*
2014 WL 623396 (D. Colo. Feb. 18, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*Dotson v. Portfolio Recovery Assocs., LLC*
2009 WL 1559813 (E.D. Pa. June 3, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Fields v. Mobile Messengers Am., Inc.*
2013 WL 6073426 (N.D. Cal. Nov. 18, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 23

*Finni v. Dish Network, LLC*
955 F. Supp. 2d 1288 (M.D. Fla. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Frausto v. IC Sys., Inc.*
2011 WL 3704249 (N.D. Ill. Aug. 22, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Gannon v. Network Tel. Servs., Inc.*
2013 WL 2450199 (C.D. Cal. June 5, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 13

*Gene & Gene [LLC v. Biopay LLC*
541 F.3d 318 (5th Cir. 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*General Tel. Co. v. EEOC*
446 U.S. 318 (1980)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*General Tel. Co. Of Southwest v. Falcon*
457 U.S. 147 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Goldsby v. Adecco, Inc.*
2008 WL 5221088 (N.D. Cal. Dec. 12, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Gomez v. Rossi Concrete, Inc.*
270 F.R.D. 579 (S.D. Cal. 2010)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Grant v. Capital Mgmt. Servs., L.P.*
449 Fed. Appx. 598 (9th Cir. Sept. 2, 2011)................................ 10, 11

*Groditzky v. American Honda Motor Co.*
2014 WL 718431 (C.D. Cal. Feb. 19, 2014)................................. 1

*Gutierrez v. Barclays Grp.*
2011 WL 579238 (S.D. Cal. Feb. 9, 2011)................................ 8, 12

*Hanon v. DataProducts Corp.*
976 F.2d 497 (9th Cir. 1992)........................................... 18

*Heinrichs v. Wells Fargo Bank, N.A.*
2014 WL 2142457 (N.D. Cal. Apr. 15, 2014). .......................... 7, 11

*Hicks v. Client Servs., Inc.*
2008 WL 5479111 (S.D. Fla. Dec. 11, 2008)............................. 24

*Hudson v. Sharp Healthcare*
2014 WL 2892290 (S.D. Cal. June 25, 2014)............................. 11

*Jamison v. First Credit Servs., Inc.*
2013 WL 3872171 (N.D. Ill. July 29, 2013)......................... 11, 23, 24

*Jenkins v. General Collection Co.*
2008 WL 4104677 (D. Neb. Aug. 28, 2008). ........................... 18

*Jovel v. Boiron, Inc.*
2014 WL 1027874 (C.D. Cal. Feb. 27, 2014)............................. 19

*Kulig v. Midland Funding, LLC*
2014 WL 5017817 (S.D.N.Y. Sept. 26, 2014). ........................ 21, 22

*Mais v. Gulf Coast Collection Bureau, Inc.*
__ F.3d __, 2014 WL 4802457 (11th Cir. Sept. 29, 2014)................... 12, 13

*Manno v. Healthcare Recovery Grp., LLC*
289 F.R.D. 674 (S.D. Fla. 2013)........................................ 8

*Mantolete v. Bolger*
767 F.2d 1416 (9th Cir. 1985)........................................ 3

*Mazza v. American Honda Motor Co.*
666 F.3d 581 (9th Cir. 2012)........................................ 7

*Meyer v. Portfolio Recovery Assocs., LLC*
707 F.3d 1036 (9th Cir. 2012)................................. 5, 10, 11, 12

*Moore v. Firstsource Advantage, LLC*
2011 WL 4345703 (W.D.N.Y. Sept. 15, 2011). ......................... 12

HORTON V. CAVALRY PORTFOLIO SERVICES, LLC (CASE NO.: 13-CV-00307-JAH (WVG))
MEMO IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

iv

1   *O'Connor v. Diversified Consultants, Inc.*
2   2013 WL 2319342 (E.D. Mo. May 28, 2013)................................. 23

3   *Olney v. Progressive Cas. Ins. Co.*
    993 F. Supp. 2d 1220 (S.D. Cal. Jan. 24, 2014)........................... 8

4   *Osorio v. State Farm Bank, F.S.B.*
5   746 F.3d 1242 (11th Cir. 2014)........................................... 8

6   *Page v. Regions Bank*
    917 F. Supp. 2d 1214 (N.D. Ala. 2012)................................... 8
7
    *Parkis v. Arrow Fin. Servs.*
8   2008 WL 94798 (N.D. Ill. Jan. 8, 2008)................................. 18

9   *In Re Pom Wonderful LLC*
10  2014 WL 1225184 (C.D. Cal. Mar. 25, 2014)............................... 8

11  *Ranwick v. Texas Gila, LLC*
    2014 WL 3891663 (D. Minn. Aug. 7, 2014)................................ 12
12
    *Red v. Kraft Foods, Inc.*
13  2012 WL 8019257 (C.D. Cal. Apr. 12, 2012)............................. 10

14  *Roberts v. PayPal, Inc.*
15  2013 WL 2384242 (N.D. Cal. May 30, 2013).............................. 12

16  *Satterfield v. Simon & Schuster, Inc.*
    569 F.3d 946 (9th Cir. 2009)....................................... 6, 8, 12
17
    *The Savanna Grp., Inc. v. Trynex, Inc.*
18  2013 WL 66181 (N.D. Ill. Jan. 4, 2013)................................. 20

19  *Savino v. Computer Credit, Inc.*
20  164 F.3d 81 (2d Cir. 1998)............................................. 19

21  *Sethavanish v. ZonePerfect Nutrition Co.*
    2014 WL 580696 (N.D. Cal. Feb. 13, 2014)............................. 8, 10
22
    *Smith v. City of Oakland*
23  2008 WL 2439691 (N.D. Cal. June 16, 2008)............................. 16

24  *Smith v. Microsoft Corp.*
25  297 F.R.D. 464 (S.D. Cal. 2014)....................................... 10

    *Soppet v. Enhanced Recovery Co.*
26  679 F.3d 637 (7th Cir. 2012).......................................... 8, 13

27  *Southwell v. Mortgage Investors Corp. of Ohio, Inc.*
28  2014 WL 3956699 (W.D. Wash. Aug. 12, 2014)........................... 9, 23

*Steinoff v. Star Tribune Media Co.*
2014 WL 1207804 (D. Minn. Mar. 24, 2014)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Stone v. Advance Am.*
2009 WL 4722924 (S.D. Cal. Dec. 4, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Terrill v. Electrolux Home Prods., Inc.*
753 F. Supp. 2d 1272 (S.D. Ga. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Amer. Trucking Assoc.*
310 U.S. 534 (1940). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Vandervort v. Balboa Capital Corp.*
287 F.R.D. 554 (C.D. Cal. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13

*Van Patten v. Vertical Fitness*
2014 WL 2116602 (S.D. Cal. May 20, 2014)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Vega v. T-Mobile USA, Inc.*
564 F.3d 1256 (11th Cir. 2009)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.*
274 F.R.D. 229 (S.D. Ill. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Vinole v. Countrywide Home Loans, Inc.*
571 F.3d 935 (9th Cir. 2009)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Wal-Mart Stores, Inc. v. Dukes*
131 S. Ct. 2541 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 9, 11, 15, 17

*Wills v. Optimum Outcome, Inc.*
2014 WL 220707 (D. Utah Jan. 21, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Xavier v. Philip Morris USA Inc.*
787 F. Supp. 2d 1075, 1091 (N.D. Cal. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Zinser v. Accufix Research Institute, Inc.*
253 F.3d 1180 (9th Cir. 2001)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 22

# FEDERAL STATUTES

Federal Rules of Civil Procedure
Rule 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
Rule 23(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 16
Rule 23(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Rule 23(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18
Rule 23(a)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Rule 23(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Rule 23(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Rule 23(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 25
Rule 23(g)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Rule 23(g)(1)(A)(i-iv). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Rule 23(g)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Rule 23(g)(1)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Rules Enabling Act
28 U.S.C. § 2072(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Telephone Consumer Protection Act
47 U.S.C. § 227, *et seq.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
§ 227(b)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
§ 227(b)(1)(A)(iii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
§ 227(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# OTHER AUTHORITY

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Request of ACA Int'l for Clarification and Declaratory Ruling*, 23 F.C.C.R. 559, 565 (Jan. 4, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I.     **INTRODUCTION**

In February, 2013, Cory Horton ("Horton") filed a class action complaint against Cavalry Portfolio Services, LLC ("Cavalry"), claiming it violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.  Horton litigated this action for over a year and a half, waited until <u>after</u> class-related  discovery closed, and then filed his motion seeking to certify a newly-defined class that differs radically from the class identified in his Complaint.[1]  His motion fails for several reasons.

Horton has not shown that class members can be ascertained.  First, he ignores the huge hurdles he faces just to show Cavalry even successfully made a "call" to any of the account holders.  Cavalry has shown with this opposition that *millions* of the "calls" at issue in his proposed class were not "calls" at all, because there was no connection made to a telephone circuit or to any phone.  Second, Horton brushes past the challenges with identifying the "called party" who has standing to pursue a claim.  Cavalry's records show, for example, nearly one million instances where Cavalry reached someone who was <u>not</u> the customer listed in its records.  There is no way to identify these third parties even though they, not Cavalry's customers, would be the only persons who might have standing.  Third, Horton ignores the myriad individual

---

[1] *Compare* Doc. No. 1 at 5:5-9 *with* Doc. No. 90-1 at 2:5-8.  The Ninth Circuit has not resolved whether a plaintiff can seek to certify a class that differs from the class proposed in the complaint. *See Groditzky v. American Honda Motor Co.*, 2014 WL 718431, *4 (C.D. Cal. Feb. 19, 2014).  Horton did not obtain leave to amend his complaint to re-define his proposed class.  Cavalry was thus forced to gather, analyze and compile a tremendous amount of information regarding the new proposed class – to show why it cannot be certified – much of which is presented in the accompanying declaration of Marc Perry.  Any suggestion that the Court should not consider this evidence because portions of it are "new" must be rejected, as Horton invited this by changing his class definition at the last minute.  The refusal to consider evidence supporting Cavalry's potential defenses to the claims of his belatedly-identified proposed class members would violate Cavalry's due process rights. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011) (class cannot be certified if this would effectively deprive defendant of ability to defend itself against class members' claims:  "Because the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' 28 U.S.C. § 2072(b); . . . , a class cannot be certified on the premise that Wal–Mart will not be entitled to litigate its statutory defenses to individual claims. . . ."); *see also Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) (defendant in class action has "due process right to raise individual challenges and defenses to claims, and a class action cannot be certified in a way that eviscerates this right or masks individual issues.").

issues surrounding whether proposed class members gave their "prior express consent" to be called.  Here again, Cavalry has provided numerous examples with this opposition where customers provided that consent, either to the original creditor or directly to Cavalry.  The account records of the nearly two million proposed class members would need to be reviewed individually to determine where other instances of prior express consent are present.  Thus, the class members are not ascertainable. For these same reasons, Horton has not shown that class members are numerous, that there are common questions of law and fact, or that a class action is a superior method for adjudicating these claims.

Horton claims his expert can solve some of these problems, because she can allegedly determine which call attempts were made to cell phones, and who owned the phone at the time the call attempt was made.  But she conceded that she had not, in fact, identified which numbers were cell phone numbers.  Nor did she provide any reliable method for identifying and locating the called party – *i.e.*, the person who was using the phone at the time of the call attempt.  Her methodology is unreliable and Cavalry has separately moved to strike her report.

Finally, neither Horton nor his counsel are adequate to represent the proposed class.  Horton's deposition revealed he has serious credibility issues that make him unsuitable to represent the class and has improperly abdicated his responsibilities as class representative by ceding all control to his counsel.  Horton's counsel has shown that he is not adequate because he made an individual settlement demand on behalf of Horton, and rejected an individual offer made to Horton for far more than he could hope to recover – all without communicating with his client.  For all of these reasons, the motion for class certification should be denied.

//

//

//

## II.   ARGUMENT

### A.   Standards For Class Certification

Class certification must be denied unless the Court finds that Horton can satisfy all four elements of Rule 23(a) of the Federal Rules of Civil Procedure, and at least one of the subsections of Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Horton bears the burden "of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations."  *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985).

Certifying a class action is not a routine undertaking.  Rather, no class may be certified until the Court conducts a "rigorous analysis" of the evidence presented to determine if it supports each element of Rule 23.  *General Tel. Co. Of Southwest v. Falcon*, 457 U.S. 147, 161 (1982) (reversing certification order: class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."); *Zinser v. Accufix Research Institute, Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001) (affirming denial of certification:  "Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23. (citation).").  The importance of conducting this "rigorous analysis" cannot be overstated in a TCPA case, like this one, where certifying "a class action can coerce a defendant into settling on highly disadvantageous terms regardless of the merits of the suit," as the TCPA "makes violators strictly liable for cumulatively very heavy statutory penalties."  *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 722, 724 (7th Cir. 2011).

It is not correct, as Horton suggests, that the Court must accept as true the allegations he makes in support of his motion, while ignoring the merits of his claims.  *See* Docket 90-1 at 11:25-27.  To the contrary, the Supreme Court has recognized the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," and "sometimes it may be

necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160.  The Supreme Court recently reiterated this, emphasizing that "Rule 23 does not set forth a mere pleading standard," but rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550-52 (2011) (citation omitted).  In *Dukes*, the Court observed that a class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual parties only" and for this reason a district court must take care to ensure that the class representative is "part of the class and must possess the same interest and suffer the same injury as the class members." *Id*. at 2550.

**B.     The Motion Should Be Denied Because Horton Has Not Identified An Ascertainable Class**

**1.     No Class Can Be Certified Unless It Is Ascertainable**

Horton's motion must be denied because he cannot demonstrate that members of class are readily ascertainable using objective criteria.  "Although not specifically mentioned in Rule 23(a), a plaintiff's class definition must set forth a class that is identifiable and ascertainable. . . . A class is identifiable and ascertainable if it is 'administratively feasible for the court to ascertain whether an individual is a member.' . . . Further, '[a] class must be ascertainable without inquiring into the merits of the case.'" *Gannon v. Network Tel. Servs., Inc.*, 2013 WL 2450199, *2 (C.D. Cal. June 5, 2013); *accord Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 557-59 (C.D. Cal. 2012).  The motion must fail unless the class as defined by Horton is "precise," "objective" and "presently ascertainable." *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008) (class not ascertainable if court must make legal determination as to each potential member) (internal quotations and citations omitted).  As discussed

below, courts routinely deny motions for class certification if class members cannot be ascertained without fact-intensive inquiries.

Horton defines his proposed class as follows:  "All persons within the United States whose cellular telephones [sic] were obtained by Cavalry Portfolio Services, LLC, from CBC Innovis and subsequently called by Cavalry using the Avaya Communication Proactive Contact 5.0 or the Aspect Ensemble Pro systems between February 9, 2009, and February 8, 2013."  Doc. No. 90-1 at 2:5-8.  He has not articulated, nor can he articulate, a method to reliably ascertain class members.

## 2. The Class Is Not Ascertainable Because Horton Cannot Identify When Cavalry Made A Call

Under the TCPA, it is unlawful "to **make** any call (other than a call . . . made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  Thus, "[t]he three elements of a TCPA claim are: (1) the defendant **called** a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent."  *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (emphasis added).  Step one in the process, therefore, is determining if a call has been made.  Horton has not shown how the Court can determine this on a class-wide basis.  It cannot.

To establish that a "call" was "made" to the cell phone of a prospective class member, Horton must prove that Cavalry communicated directly with someone. "While the TCPA does not define 'call,' that operative term quite naturally suggests some kind of direct communication between two parties – the caller and the caller's intended recipient.  A person is said to 'call' whoever is on the other end of the line." *Ashland Hosp. Corp. v. Service Employees Int'l Union*, 708 F.3d 737, 742 (6th Cir. 2013).  This requirement for some form of contact between Cavalry and the called party is consistent with the purpose of the TCPA, which was designed to prevent

invasions of privacy:  "The purpose and history of the TCPA indicate that Congress was trying to prohibit the use of ATDSs to communicate with others by telephone in a manner that would be an invasion of privacy." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).  There can be no invasion of privacy, nor any "call" that is "made" to anyone, unless Horton shows at a bare minimum that Cavalry caused the prospective class member's cellular telephone to ring.[2]  Horton never explains how he will do this.

Cavalry's telephone systems generate data – known as "disposition codes" – that often demonstrate beyond question that the telephone Cavalry wanted to call did <u>not</u>

---

[2]  Horton quotes selectively and in a highly misleading manner from footnote three of the *Satterfield* opinion to suggest an "attempt" to make a call is sufficient, but the statute prohibits "making" a "call," not <u>attempting</u> to do so.  Horton portrays the footnote as follows: "A 'call,' in the context of the TCPA, includes any attempted call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954, n.3 (9th Cir. 2009) ("Congress used the word 'call' to refer to any attempt to communicate by telephone.")." Doc. No. 90-1 at 7:26-28.  Horton, however, deletes the first part of the sentence, which references the "receipt" of automated calls.  In full, the footnote reads as follows: "The word 'call' has several plain and ordinary meanings. *See generally* Webster's Third New Int'l Dictionary 317–18 (2002). Given that the TCPA was enacted to regulate the receipt of automated telephone calls, Congress used the word 'call' to refer to an attempt to communicate by telephone. *See United States v. Amer. Trucking Assoc.*, 310 U.S. 534, 542–43, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) (when words of a statute are susceptible to more than one meaning, courts are to interpret them in a manner which is reasonable given the subject matter of the statute and its purpose)."  At issue in *Satterfield* was whether a text message was a "call."  The Court did <u>not</u> rule that any "attempt" to make a call or to send a text, was sufficient.  Nor would this make sense, given the plain language and purpose of the Act, as described by the Ninth Circuit: "We also consider the purposes of the TCPA. The TCPA was enacted to 'protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers.' S. Rep. No. 102–178, at 1 (1991), reprinted in 1991 U.S.C.C.A.N. 1968. The TCPA was enacted in response to an increasing number of consumer complaints arising from the increased number of telemarketing calls. See id. at 2. The consumers complained that such calls are a 'nuisance and an invasion of privacy.' See id. The purpose and history of the TCPA indicate that Congress was trying to prohibit the use of ATDSs to communicate with others by telephone in a manner that would be an invasion of privacy. We hold that a voice message or a text message are not distinguishable in terms of being an invasion of privacy.  The language and purpose of the TCPA support the conclusion that the use of an ATDS to make any call, regardless of whether that call is communicated by voice or text, is prohibited. However, we recognize that Congress could not have spoken clearly to this issue in 1991 when the statute was enacted. Therefore, we conclude that the statute is silent as to whether a text message is a call within the Act." *Satterfield*, 569 F.3d at 954.

ring, because there was an "Invalid Number," a "Fast Busy," "No Dial Tone," a "Vacant Circuit," or for numerous other reasons. *See* Declaration Of Marc Perry In Support of Opposition To Motion For Class Certification ("Perry Decl."), ¶¶ 11-12, 14-15. There are literally millions of examples where no "call" to a prospective class member was ever "attempted," much less made. *Id*. at ¶ 15(A-T).

At other times, it is simply not possible to ascertain if the phone ever rang, because the disposition code is ambiguous. *Id.* at ¶ 16. Mr. Perry explains why codes such as "No Voice Detect" or "CCS Dead Air" or "No Answer" or "CCS General" and other similar codes do not reflect if a "call" was "made" to anyone. *Id.* at ¶ 16(A-Q).

Horton has not shown how he will identify called parties under the TCPA, *i.e.*, the persons to whom Cavalry made a call. Absent an individualized inquiry into each call attempt, he cannot do this. The class is not ascertainable.

### 3.    The Class Is Not Ascertainable Because Horton Cannot Identify The Called Parties Who Have TCPA Standing

Only persons with standing may be members of a class. *See Mazza v. American Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) (""[N]o class may be certified that contains members lacking Article III standing.'"); *see also APB Assocs., Inc. v. Bronco's Saloon, Inc.*, 297 F.R.D. 302, 315-19 (E.D. Mich. 2013) (class not ascertainable where it included persons who lacked standing to pursue TCPA claim). Horton's new proposed class is hopelessly overbroad, because it includes Cavalry account holders who were not the called party and who clearly would <u>not</u> have standing. Individual inquiry would be needed "in order to ascertain the members of the class." *See APB Assocs., Inc.*, 297 F.R.D. at 320.

Only the "called party" has standing to assert TCPA claim. *See* 47 U.S.C. § 227(b)(1)(A). The Ninth Circuit has not addressed who is a "called party" for purposes of the TCPA, *see Heinrichs v. Wells Fargo Bank, N.A.*, 2014 WL 2142457, *1 (N.D. Cal. Apr. 15, 2014), but courts have held that the person to whom the telephone number is assigned – the person variously described as the "regular user,"

1   the "authorized user" or the "subscriber" of the phone – has standing.[3]   Regardless of

2   the terminology used, only the person who actually uses and answers the phone has

3   standing.  This makes sense, given that the TCPA is designed to protect against

4   invasions of privacy.  *See Satterfield*, 569 F.3d at 954.  Only the person who carries the

5   phone and needs to use it has a privacy interest in avoiding unwanted calls.[4]

6         Cavalry's records reflect a name and address associated with the account holder,

7   but they do not necessarily show the name and address of the called party.[5]   Indeed, it

8   is <u>extremely</u> common for Cavalry to reach a "wrong number" or some other third party

9   when it is trying to reach its account holder, and it is impossible to identify the called

---

11      [3]  *See Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014) (per curiam) ("called party" means either subscriber or user of phone); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014) ("called party" means subscriber to cell phone service); *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 642 (7th Cir. 2012) ("called party" means "person subscribing to the called number at the time the call is made"); *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1225-26 (S.D. Cal. Jan. 24, 2014) ("regular user of a cellular telephone has standing"); *Manno v. Healthcare Recovery Grp., LLC*, 289 F.R.D. 674, 682 (S.D. Fla. 2013) ("regular user" of phone has standing, even if phone is not registered in that persons's name); *Finni v. Dish Network, LLC*, 955 F. Supp. 2d 1288 (M.D. Fla. 2013) ("regular user and carrier" of phone has standing); *Page v. Regions Bank*, 917 F. Supp. 2d 1214, 1219 (N.D. Ala. 2012) (concluding plaintiff was "the 'called party' because he was the 'subscriber' to the cellular telephone in question.  [Plaintiff] is the regular user and carrier of the cellular telephone, as well as the person who needs the telephone line to receive other calls"); *Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559, 565 (W.D. Wash. 2012) (agreeing that "authorized and sole user of a cellular telephone number" who "receives unsolicited calls (or text messages) at that number" has standing); *Gutierrez v. Barclays Grp.*, 2011 WL 579238, *5 (S.D. Cal. Feb. 9, 2011) (describing person to whom number assigned as  subscriber; that person has standing).

      [4]  *See Manno*, 2013 WL 1283881 at *4 ("The thrust of these decisions and others is that a plaintiff's status as a 'called party' depends not on such technicalities as whether he or she is the account holder or the person in whose name the phone is registered, but on whether the plaintiff is the regular user of the phone and whether the defendant was trying to reach him or her by calling that phone.").

      [5]  Courts have denied certification where a defendant's records were not sufficient to identify class members. *See, e.g., Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097, *3 (N.D. Cal. Jan. 7, 2014) (class not ascertainable where defendant's records did not reflect which consumers purchased ice cream containing allegedly synthetic ingredient); *Sethavanish v. ZonePerfect Nutrition Co.*, 2014 WL 580696, *6 (N.D. Cal. Feb. 13, 2014) (no ascertainable class where defendant's records did not reflect who purchased nutrition bars); *Xavier*, 787 F. Supp. 2d at 1089 ("[T]here are no defendant records on point to identify class members."); *In Re Pom Wonderful LLC*, 2014 WL 1225184, *6 (C.D. Cal. Mar. 25, 2014) (decertifying class; defendant's records did not reflect who purchased product).

1    party in these instances.  *See* Perry Decl. at ¶ 17.  Mr. Perry identified nearly one

2    million examples where the disposition codes reflect that Cavalry made contact with

3    someone who was <u>not</u> Cavalry's customer.  *Id.*  Cavalry's expert, Ken Sponsler,

4    explains in his report why the regular user of a cellular telephone cannot be reliably

5    identified.  *See* Doc. No. 87-3 at 7:22-15:22.

6         Horton claims his expert, Anya Verkhovskaya, can "determine the historical

7    owner of the telephone at the date and time of the call and update their addresses," but

8    it is undisputed that she has not actually done this.[6]  Nor is it permissible to  request

9    that prospective class members indicate on a claim form whether they are the regular

10   users of a particular cell phone.  The Third Circuit rejected a proposal to use affidavits

11   to ascertain class members in *Carrera*, noting that this process "does not address a

12   core concern of ascertainability: that a defendant must be able to challenge class

13   members."  *Id.* 727 at 309.[7]

14        Cavalry has a right to challenge whether each prospective class member can

15   prove they have standing under the TCPA, *i.e.*, that they were the regular users of the

16   cell phones.  *See Dukes*, 131 S. Ct. at 2561; *Carrera*, 727 F.3d at 307.  Each class

---

18   [6] *See* Doc. 90-1 at 13:9-12 (citing Verkhovskaya Report at ¶¶ 16-19, 21-31).  It is questionable

19   whether the data Ms. Verkhovskaya says she would use to ascertain and identify the owners of the cell
     phone numbers even exists.  She claims she would rely on LexisNexis to provide the necessary

20   information, *see* Doc. No. 90-2, Ex. G at ¶¶ 22-24, but as explained in the declaration of Stephen

21   Anderson, it appears that LexisNexis does not have this capability.  *See* Declaration of Stephen
     Anderson in Support of Opposition to Motion for Class Certification at ¶¶ 3-5.  Another court recently

22   refused to rely on a declaration submitted by Ms. Verkhovskaya in support of class certification because
     it was "prospective; *i.e.*, it simply describes what she intended to do with the data provided by

23   Plaintiffs."  *Southwell v. Mortgage Investors Corp. of Ohio, Inc.*, 2014 WL 3956699, *4 (W.D. Wash.
     Aug. 12, 2014).  Further problems with her report are discussed in the Defendant's Motion To Strike

24   the report, filed concurrently herewith.

25   [7]  The court also observed: "A defendant has a similar, if not the same, due process right to

26   challenge the proof used to demonstrate class membership as it does to challenge the elements of a
     plaintiff's claim. . . . Ascertainability provides due process by requiring that a defendant be able to test

27   the reliability of the evidence submitted to prove class membership."  *Id.* at 307.  It would be "unfair
     to absent class members if there is a significant likelihood their recovery will be diluted by fraudulent

28   or inaccurate claims."  *Id.* at 310.

---

member would have to be examined about their use of the phone, including when they obtained the number, whether they or someone else regularly used and carried the phone, and whether they, in fact, answered any call made by Cavalry.  Courts have repeatedly denied motions to certify classes where the class members would need to "self-identify" as part of the certification process.[8]

Alternatively, Ms. Verkhovskaya says Horton could obtain subscriber information by issuing subpoenas to the telephone carriers, *see* Doc. No. 90-2, Ex. G. at ¶¶ 28-30, but given the uncertainties relating to the record retention policies of these unidentified phone carriers, the success of such a process is speculative and would be completely unworkable.  Indeed, at least one court has rejected this sort of proposal. *See Brown v. Wells Fargo & Co.*, 2013 WL 6851068, *5 (D. Minn. Dec. 30, 2013).

Horton has failed to show that he can identify class members who are called parties with standing.  The class is not ascertainable.

### 4. The Class Is Not Ascertainable Because There Are Individual Issues Regarding Whether Proposed Class Members Provided Prior Express Consent To Be Called

Contrary to his argument, *see* Doc. No. 90-1 at 8:27-9:5, Horton bears the burden of proving that calls were made "without the recipient's prior express consent." *Meyer*, 707 F.3d at 1043[9]; *see also Smith v. Microsoft Corp.*, 297 F.R.D. 464, 471

---

[8] *See, e.g., Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1091 (N.D. Cal. 2011) ("If absent class members are permitted to testify to their smoking histories by way of affidavit, . . . , Philip Morris would be forced to accept their estimates without the benefit of cross-examination.  Such a procedure would not be proper or just."); *Red v. Kraft Foods, Inc.*, 2012 WL 8019257, *6 (C.D. Cal. Apr. 12, 2012) ("Cases where self-identification alone has been deemed sufficient to render a class ascertainable generally involve situations where consumers are likely to have retained receipts, where the relevant purchase was a memorable big ticket item, or where the defendant would have access to a master list of either consumers or retailers who dealt with the items at issue."); *Sethavanish*, 2014 WL 580696 at * 6 ("It is also unclear how Plaintiff intends to weed out inaccurate or fraudulent claims.").

[9] Horton ignores *Meyer* and cites *Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. Appx. 598 (9th Cir. Sept. 2, 2011), an unpublished memorandum disposition the Court said  "is not appropriate for publication and not precedent except as provided by 9th Cir. R. 36-3."  *See id.* n.**.  Under Rule 36-3, unpublished dispositions, such as *Grant*, "are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."  Ninth Cir. R. 36-3(a).  An

---

1    (S.D. Cal. 2014); *Fields v. Mobile Messengers Am., Inc.*, 2013 WL 6073426, *3 (N.D.

2    Cal. Nov. 18, 2013).[10]  Horton has not carried his burden of showing how the lack of

3    prior express consent can be proven on a class-wide basis.[11]

4         Congress did not define the phrase "prior express consent" in the TCPA, but it

5    did authorize the Federal Communications Commission ("FCC") to "prescribe

6    regulations to implement the requirements" of the TCPA.  47 U.S.C. § 227(b)(2).

7    Pursuant to that authority, the FCC issued rules and regulations in 1992, "regarding the

8    issue of 'prior express consent,' stating that 'persons who knowingly release their

9    phone numbers have in effect given their invitations or permission to be called at the

---

11   unpublished disposition issued after January 1, 2007, such as *Grant*, "may be cited to the courts of this circuit in accordance with" Rule 32.1 of the Federal Rules of Appellate Procedure.  *Id.* 36-3(b).

12   Although Rule 32.1 prevents courts from restricting citation to dispositions that have been "designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like," Fed. R. App.

13   32.1(a), Horton has not shown that his reliance on *Grant* is warranted by Rule 36-3.

14   [10]  Horton also relies on *Hudson v. Sharp Healthcare*, 2014 WL 2892290 (S.D. Cal. June 25,

15   2014), and *Heinrichs v. Wells Fargo Bank, N.A.*, 2014 WL 985558 (N.D. Cal. Mar. 7, 2014), but these cases do not help him.  *Hudson* did not address the Ninth Circuit's decision in *Meyer*.  In *Heinrichs*,

16   meanwhile, Judge Alsup noted he had previously applied *Meyer* in determining lack of prior express consent was an element of a TCPA claim in *Fields*, but explained *Fields* was distinguishable because

17   there he "only addressed consent in connection with a motion for class certification.  In fact, the specific issue was 'whether consent in TCPA putative class action is a common issue that can be resolved with

18   common proof,' with the undersigned judge placing 'the burden on plaintiffs to prove a lack of prior express consent' in seeking class certification. [citation omitted]."  *Heinrichs*, 2014 WL 985558 at *2.

19   Because the question before him in *Heinrichs* was "whether lack of consent must be affirmatively plead to survive a Rule 12(b)(6) motion," Judge Alsup reasoned neither *Meyer* nor *Fields* applied.  *Id.* at *3.

20   The question presented here, however, is the same as the question before the court in *Fields*.  Thus, *Heinrichs* does not apply here, *Meyer* and *Fields* do.  Finally, Horton cites Magistrate Judge Gallo's

21   discovery ruling in this case, but that ruling was made "for purposes of this Order" only, and recognized that "*Fields* addressed prior express consent in relation to a motion for class certification."  Doc.  No.

22   64 at 8:1-9:19.

23

24   [11]  Even if prior express consent is an affirmative defense that Cavalry must prove,  Cavalry is

25   entitled to assert it with respect to each prospective class member, *see Dukes*, 131 S. Ct. at 2561, and it presents individual issues.  "[T]he need for individualized inquiries with respect to an affirmative

26   defense may still defeat predominance."  *Chapman v. First Index, Inc.*, 2014 WL 840565, *3 (N.D. Ill. Mar. 4, 2014), citing *Jamison v. First Credit Servs., Inc.*,  2013 WL 3872171, *6 (N.D. Ill. July 29,

27   2013) ("Individualized issues necessary to decide an affirmative defense may predominate so as to prevent class certification.  For purposes of class certification, it is [plaintiff's] burden to prove that they

28   do not." (citations omitted)).

---

number which they have given, absent instructions to the contrary.'" *See Roberts v. PayPal, Inc.*, 2013 WL 2384242, *3 (N.D. Cal. May 30, 2013) (quoting *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 7 F.C.C.R. 8752, 8769 (Oct. 16, 1992)).[12]

There are a myriad of ways in which prior express consent can be established. For example, if a consumer provides a cell number when applying for credit, goods or services, this is prior express consent to be called at that number.[13]  Prior express consent may also be supplied at other times during an account relationship.[14]

---

[12] In 2008, the FCC clarified "that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Request of ACA Int'l for Clarification and Declaratory Ruling*, 23 F.C.C.R. 559, 565 (Jan. 4, 2008) ("2008 Ruling"); *see generally Mais v. Gulf Coast Collection Bureau, Inc.*, ___ F.3d ___, 2014 WL 4802457, **5-6 (11th Cir. Sept. 29, 2014) (discussing history of FCC's rulings on meaning of "prior express consent").  The Ninth Circuit, meanwhile, has explained that "express consent" means "'[c]onsent that is clearly and unmistakably stated.'" *Satterfield*, 569 F.3d at 955 (quoting Black's Law Dictionary 323 (8th ed. 2004)).  That court also discussed the FCC's 2008 Ruling in *Meyer*, explaining that "prior express consent is consent to call a particular telephone number in connection with a particular debt that is given before the call in question is placed." *Meyer*, 707 F.3d at 1042.

[13] *See, e.g., Van Patten v. Vertical Fitness*, ___ F. Supp. 2d ___, 2014 WL 2116602, *9 (S.D. Cal. May 20, 2014) (plaintiff consented to receiving text messages when he provided phone number on gym membership application); *Steinoff v. Star Tribune Media Co.*, 2014 WL 1207804, *3 (D. Minn. Mar. 24, 2014) (plaintiff consented to receiving calls when she provided phone number when subscribing to newspaper); *Conover v. BYL Collections Servs., LLC*, 2012 WL 4363740, *6 (W.D.N.Y. Sept. 21, 2012) (plaintiff consented to be contacted by debt collector regarding debt at number provided in credit application); *Frausto v. IC Sys., Inc.*, 2011 WL 3704249, *2 (N.D. Ill. Aug. 22, 2011) (prior express consent existed for defendant debt collector to call plaintiff who provided cell number when registering for PayPal account); *Gutierrez*, 2011 WL 579238 at **2-3 (prior express consent where telephone number provided on credit card application).

[14] *See, e.g., Ranwick v. Texas Gila, LLC*, ___ F. Supp. 2d ___, 2014 WL 3891663, * (D. Minn. Aug. 7, 2014) (plaintiff consented to calls from creditor and debt collector where consumer provided cell phone number during call with creditor regarding outstanding fines); *Wills v. Optimum Outcome, Inc.*, 2014 WL 220707, *4 (D. Utah Jan. 21, 2014) (prior express consent existed where plaintiff provided telephone number in letter to creditor); *Moore v. Firstsource Advantage, LLC*, 2011 WL 4345703, *10 (W.D.N.Y. Sept. 15, 2011) (rejecting argument that prior express consent exists only if number  provided at time of applying for services).

---

Although a customer can provide prior express consent directly to Cavalry by supplying their number, this is not required.  Voluntarily giving a cell number to a creditor or vendor provides prior express consent to the creditor and vendor <u>and</u> their collection agents.  *See Soppet*, 679 F.3d at 643.  In addition, prior express consent can be given through an intermediary.  *See Mais*, 2014 WL 4802457 at **10-11.  The *Mais* court explained that "the appropriate analysis turns on whether the called party granted permission or authorization, not on whether the creditor received the number directly." *Id.* at *11.  And one who provides a cell phone number in a letter to a creditor likewise provides prior express consent to be called at that number by the creditor <u>or</u> a debt collector acting on its behalf.  *See, e.g., Wills*, 2014 WL 220707 at *4 (prior express consent existed for call by debt collector where plaintiff provided cell number in letter to creditor regarding payment arrangements).

Simply put, a collection company like Cavalry can rely on prior express consent given to its clients or their predecessors-in-interest, whether the number was provided when the relationship was first established or subsequently.  There are no magic words which must be used to provide prior express consent, nor is there a specific time when it must be given.  Given the variety of circumstances in which prior express consent can be established, it is not surprising that courts routinely decline to certify TCPA class actions because the proposed class cannot be ascertained.[15]  Judge Sammartino

---

[15]   *See, e.g., Gannon*, 2013 WL 2450199 at *2 (class "unascertainable and unidentifiable" because court could not determine if individuals were in class without extensive "individual inquiry into whether the potential class members consented to receiving text messages"); *Vandervort*, 287 F.R.D. at 557-59 (class of recipients of unsolicited fax advertisements not ascertainable because evidence reflected "that whether a fax recipient did or did not consent to fax advertising requires an individual inquiry"); *Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235-36 (S.D. Ill. 2011) (class not ascertainable if it "includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant] knowing the [defendant] would call those numbers."; even if class limited only to those who were reassigned telephone numbers voluntarily provided to defendant, "the process of determining who fell within such a class could not be determined by objective criteria applicable to the class as a whole. On the contrary, specific inquiry would be necessary to determine whether each telephone number had actually been reassigned to a new customer. . . .  Even for any reassigned numbers that could be identified, it would be necessary to identify the people assigned to

recently emphasized that "class certification is warranted only when the 'unique facts' of a particular case indicate that individual adjudication of the pivotal element of prior express consent is unnecessary." *Connelly v. Hilton Grand Vacations Co.,* 294 F.R.D. 574, 577 (S.D. Cal. 2013).

Horton implies  that class members can be easily ascertained using a list of "all attempted calls . . . to numbers obtained from CBC Innovis" and then matching the list to the associated account numbers.[16]  This ignores both the fact that account holders often are <u>not</u> the called parties, as previously explained, and the numerous ways by which account holders may have provided prior express consent to be called on their cellular phones.  For example, no less than 1,467,905 of the alleged "calls" attempted by Cavalry related to phone numbers provided to Cavalry by the creditors who originated the accounts <u>before</u> those same numbers were later obtained by Cavalry from CBC Innovis.  *See* Perry Decl. at ¶ 18.  It is highly unlikely that these account holders could be class members, because Cavalry would have the requisite consent to call any cellular telephone numbers.  At best, an individualized inquiry would be required to determine whether prior express consent exists as to this group.

---

those numbers at the times the allegedly offending calls were made, which may not be the people currently assigned to those numbers.  It is clear to the Court that determining who would be in a class narrowed to an appropriate size could not be done by reference to objective criteria applied class-wide and would be an unmanageable task.").

[16] *See* Doc. No. 90-1 at 13:6-15.  Horton does <u>not</u> actually say that he can identify and ascertain the class members.  What he says is that "[t]he universe of potential calls made to a cell phone within the class period has been produced and the account holders called and the number of calls to CBC Innovis numbers which were cellular phones is identifiable and ascertainable." *Id.* at 13:12-15.  As explained below, however, the Cavalry account holder is not necessarily the "called party."

Numerous account holders provided their prior express consent to the originating creditor via contract. *Id.* at ¶ 19.[17]  Cavalry's client stands in the shoes of those creditors, which means Cavalry has consent to call as well.

Beyond this, Cavalry often obtains consent to call cellular numbers directly from consumers, and evidence of such consent can only be located by individually reviewing literally millions of account notes and pieces of correspondence, and by listening to millions of recordings.  Some examples of such consent are provided with this opposition. *Id.* at ¶¶ 22-23.

Although Ms. Verkhovskaya allegedly can "determine the historical owner of the telephone at the date and time of the call and update their addresses,"[18] there are numerous problems with this, as discussed above.[19]  Put simply, Cavalry has a due process right to challenge whether each class member can prove Cavalry called them on their cell phones without their prior express consent. *See Dukes*, 131 S. Ct. at 2561; *Carrera*, 727 F.3d at 307.  Courts have repeatedly denied certification where  class members would need to "self-identify" as part of the process. *See* n.8, *supra.*

---

[17] In one of the many example contracts that provide consent for calls, the account holder agreed as follows: "You agree that we and any other owner or servicer of your account may contact you using any information or cell phone numbers you provide (whether previously or in the future.) In addition, you expressly agree that we may contact you about your account using any automated telephone dialing system and/or artificial or prerecorded voice message even if you are charged for the call under your phone plan." *See id.* at ¶ 19(Z).

[18] Doc. 90-1 at 13:9-12 (citing Verkhovskaya Report at  ¶¶ 16-19, 21-31).

[19] It is impermissible to rely upon class members to indicate on a claim form whether Cavalry called them on their cell phones without their prior express consent.  Nor is it proper to use affidavits to ascertain class members, because this process "does not address a core concern of ascertainability: that a defendant must be able to challenge class members" and would thus deprive Cavalry of due process. *Carrera*, 727 F.3d at 307, 309.  Each purported class member would have to be examined about whether they provided prior express consent.  If individual class members are unable to prove they did not consent – or if Cavalry is able to prove they did – then they are not a member of the proposed class.

1   Horton has not shown a feasible method for identifying class members who did

2   not provide prior express consent to be called on their cell phones.  The class is not

3   ascertainable.  Horton's motion must be denied.

4   **C.     Plaintiff Cannot Satisfy Rule 23(a)**

5   **1.     Horton Has Not Shown Numerosity Under 23(a)(1)**

6   For the same reasons discussed above, Horton has not met his burden of proving

7   his proposed class is "so numerous that joinder of all members is impracticable."  Fed.

8   R. Civ. P. 23(a)(1); *see Goldsby v. Adecco, Inc.*, 2008 WL 5221088, *2 n.4 (N.D. Cal.

9   Dec. 12, 2008) ("Plaintiff, however, has the burden of establishing numerosity; it is not

10  defendant's burden to disprove its existence.").[20]   Although a court may make

11  <u>reasonable</u> inferences and common-sense assumptions about numerosity, if supported

12  by the evidence, *see e.g., Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir.

13  2009); *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 660 (E.D. Cal. 2008), the court may not

14  speculate as to numerosity, *see, e.g., Vega*, 564 F.3d at 1267-68 (district court's

15  "inference of numerosity" without supporting evidence "was an exercise in sheer

16  speculation," and an abuse of discretion).[21]   Here, the Court may only speculate about

17  numerosity, which is not permitted.

18  Horton says he has satisfied numerosity, because Ms. Verkhovskaya's report

19  shows that Cavalry called approximately one and a quarter million unique cellular

20  telephone numbers,[22] and because "the number of accounts" Cavalry called "on a

21  ───────────────

22  [20]  Although classes of forty or more are generally sufficient, "classes of fifteen or less are too
    small."  *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 588 (S.D. Cal. 2010), citing *General Tel. Co.*

23  *v. EEOC*, 446 U.S. 318, 330 (1980).  The numerosity requirement therefore "requires examination of
    the specific facts of each case and imposes no absolute limitation."  *General Tel. Co.*, 446 U.S. at 330.

24

25  [21]  *Smith v. City of Oakland*, 2008 WL 2439691, *1 (N.D. Cal. June 16, 2008) (numerosity
    argument was "unsupported by anything other than 'mere speculation'"); *Terrill v. Electrolux Home*

26  *Prods., Inc.*, 753 F. Supp. 2d 1272, 1296 (S.D. Ga. 2010) (drawing inference of numerosity "without
    any supporting evidence is an abuse of discretion," and denying class certification).

27

28  [22]  As discussed more fully in Cavalry's motion to strike her report, Ms. Verkhovskaya did not
    determine the actual number of unique cellular telephone numbers called by Cavalry.

number obtained from CBC Innovis" is slightly less than two million.  Given these two assumptions, he says "common sense dictates" that Cavalry called at least forty "cellular phones obtained from CBC Innovis."  Doc. No. 90-1 at 14:9:18.  But as previously discussed, Ms. Verkhovskaya did not actually determine how many cellular numbers were called with Cavalry's telephone equipment.  She merely claimed it was possible to do so and provided an estimate.

In any event, this says nothing about whether any of those individuals are class members, because as discussed above, Horton has not shown the number of people to whom Cavalry made a call, how many account holders have standing to assert a TCPA claim, or how many people were called by Cavalry without their prior express consent. Horton has not presented evidence that the proposed class is numerous, or evidence sufficient to allow the court to make a reasonable inference of numerosity.

### 2.    Horton Has Not Shown Commonality Under 23(a)(2)

For the same reasons, Horton cannot show there are common questions of law or fact under Rule 23(a)(2).   He says there are common questions of law and fact regarding whether "(i) Cavalry used an ATDS[23] (ii) to attempt[24] to call (iii) to cellular number [sic] (iv) at a number Cavalry obtained from CBC Innovis" during the class period.  Doc. No. 90-1 at 15:19-22.  Commonality is <u>not</u> satisfied under Rule 23(a)(2) merely by showing that class members "have all suffered a violation of the same provision of law" – as Horton suggests – but rather requires proof that the claims of all the class members "depend on a common contention" that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551.

---

[23]  For the reasons explained in its summary judgment motion, *see* Doc. No. 87-1, Cavalry did not use an ATDS.  Horton did not move for summary judgment on the issue, and cannot do so now.

[24]  Again, Horton must prove that Cavalry made a call to each class member.  It is not enough for him to show that Cavalry "attempt[ed] to call" the class members.

Here, the legal and factual issues for each class member differ, because the Court cannot assume that a call was made to each class member, that each account holder on the CBC Innovis list has standing to assert a TCPA claim, or that prior express consent did not exist as to each class member.  The Court should not conduct individual inquiries on these issues to determine commonality.[25]

### 3. Horton Is Not An Adequate Class Representative Nor Is His Counsel Adequate Under Rule 23(a)(4)

Horton is not an adequate class representative.  He has diverted inordinate resources to defending against a compulsory counterclaim filed by Cavalry, and he has very serious credibility issues.  Nor is his counsel adequate, given his failure to communicate to Horton a settlement offer far in excess of what Horton could recover in this action, and in light of his conduct in making an individual settlement demand on Horton's behalf without communicating with Horton about it.

The adequacy analysis of Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  A class should not be certified where the class representative is subject to a unique defense or other legal and factual issues unique to the representative that may distract from the litigation.[26]  "A named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting

---

[25] *See, e.g., Parkis v. Arrow Fin. Servs.*, 2008 WL 94798, *4 (N.D. Ill.  Jan. 8, 2008) (denying FDCPA class; Rule 23(a)(2) not satisfied: "if resolving the common legal issue depends on factual determinations that would require individualized inquiry for each class member, commonality is not met. (citation)"); *Jenkins v. General Collection Co.*, 2008 WL 4104677, *10-11 (D. Neb. Aug. 28, 2008) (Rule 23(a)(2) not satisfied in FDCPA action*; need for third party discovery to obtain credit card agreements of purported class members weighed against class certification).

[26] *See Hanon v. DataProducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (denying class certification; "Hanon's unique background and factual situation require him to prepare to meet defenses that are not typical of the defenses which may be raised against other members of the proposed class."); *Brown v. Kelly*, 609 F.3d 467, 479-80 (2d Cir. 2010); *Beck v. Maximus, Inc.*, 457 F.3d 291, 300 (3d Cir. 2006) (reversing order certifying FDCPA class; remanding to determine if class representative was adequate in light of potential bona fide error defense to his claim).

an individual defense may not be an adequate class representative." *CE Design Ltd.*, 637 F.3d at 726.

The impact of the pending counterclaim has made Horton an inadequate class representative. He has been distracted from prosecuting claims on behalf of the class by taking two depositions on the East Coast of the original creditor, Navy Federal Credit Union, that focused primarily on the merits of Cavalry's counterclaim; by opposing Cavalry's motion for leave to file that claim; and by moving for summary judgment on that claim.

Horton's poor memory also calls his credibility into question and makes him unsuited to serve as a class representative.[27]  Horton did nothing to prepare for his deposition other than "touched bases" with his counsel on the drive to the deposition. He was incredibly evasive and combative at his deposition, responding that he could not "recall" or "remember" the answer to scores of questions, including basic details about his life, such as his education, prior lawsuits he had been involved in, various crimes or infractions he had committed, the loan that is at issue in Cavalry's pending counterclaim, properties he had owned, or even whether he ever had a residential telephone. In fact, not only was Horton evasive, he admitted that he tried to mislead Cavalry by telling the company it had called the wrong number, even though he knew it was trying to reach him, and that he lied to Cavalry about whether he had ever

---

[27]  Courts have denied certification in actions where, as here, the class representative has a bad memory or otherwise lacks credibility as to a material issue. *See, e.g., Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (FDCPA class representative was not credible: "The fact that Savino offered differing accounts about the letters that form the very basis for his lawsuit surely would create serious concerns as to his credibility at any trial."); *Dotson v. Portfolio Recovery Assocs., LLC*, 2009 WL 1559813, **3-4 (E.D. Pa. June 3, 2009) (FDCPA plaintiff gave false testimony and had bad memory: "Because plaintiff is unable to provide credible testimony, he cannot adequately protect the interests of absent members of the proposed class."); *see also Jovel v. Boiron, Inc.*, 2014 WL 1027874, *5 (C.D. Cal. Feb. 27, 2014) (denying certification based on named plaintiff's credibility problems: "Because Jovel's inconsistent statements were both significant and related to a material issue, if he serves as a representative plaintiff he will reduce the likelihood of prevailing on the class claims.").

served in the military.[28]  Beyond this, Horton displayed a general unfamiliarity with the case, his role in it, and a stunning indifference to the progress of his case.[29]

It is clear that Horton has turned the prosecution of this action over to, and is relying entirely on, his counsel.  His memory, and thus his credibility, will be a major focus here.  A trier of fact would likely find his testimony untrustworthy.  Horton is not an adequate class representative.

Nor is Horton's counsel, Sergei Lemberg, adequate class counsel.  The Court "must consider" numerous factors when "appointing class counsel."  *See* Fed. R. Civ. P. 23(g)(1); *The Savanna Grp., Inc. v. Trynex, Inc.*, 2013 WL 66181, *12 (N.D. Ill. Jan. 4, 2013).[30]  The Court is not limited to the Rule 23 factors, though, and can

---

[28]  *See* Declaration of Jeffrey A. Topor in Support of Opposition to Motion for Class Certification ("Topor Decl."), at ¶ 2, Ex A. at 8:13-20, 31:7-32:22, 38:17-39:25, 45:12-14, 64:16-65:14, 68:13-70:1, 76:1-5, 84:16-85:8, 107:24-112:3, 116:18-25, 119:2-122:2, 123:1-124:11.

[29]  Horton was unable to describe the claims he has asserted in this action. When asked what he has done to monitor the progress of the case since it was initiated, he said "I don't have to follow the progress of the case. It's not something that I do. It's not something that – I don't have to do that." He did not know when the next deadline was in the case. He repeatedly made clear that he defers to his attorneys. He could say whether any motions had been filed in the case. When asked if he understood the requirements for being a class representative, Horton said "that would be something my attorney would be better, you know, to answer," and that he could not explain what those requirements were. He did not know the geographic scope of the class he seeks to represent. He did not know if the Court had issued any scheduling orders or set a trial date. He had no understanding of what was going to happen next in the case. He does not believe it is important for him to participate personally in efforts to resolve this action on behalf of the class, instead relying on his attorneys. Even though the parties scheduled a mediation on February 18, 2014, to occur on April 24, 2014, Horton did not become aware of it until some unknown date in March or April. He did not even know whether a mediation occurred. He was unaware whether monetary relief was available to the class. He did not know that Cavalry had offered to settle the case by making a significant payment to him. He was unaware whether there had been any discovery disputes between the parties or whether the parties had asked the court to resolve any such disputes. *See* Topor Decl. at ¶ 2, Ex. A at 131:7-9, 135:1-136:5, 136:13-138:2, 147:10-13, 148:7-16, 149:9-12, 149:17-20, 150:16-151:10, 155:7-156:1, 161:1-4, 161:11-22, 188:9-15, 188:21-22, 189:6-7, 189:9-12, 200:16-23.

[30]  Specifically, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

---

1  "consider any other matter pertinent to counsel's ability to fairly and adequately

2  represent" the class's interests and can order counsel to "provide information on any

3  subject pertinent to the appointment."  Fed. R. Civ. P. 23(g)(1)(B), (C); *see Kulig v.*

4  *Midland Funding, LLC*, 2014 WL 5017817, *3 (S.D.N.Y. Sept. 26, 2014)

5  ("Compliance with these mandatory qualifications does not end the inquiry.").  "It is

6  well established that counsel for plaintiff has a fiduciary relationship with putative

7  class members" that commences as soon as the class complaint is filed.  *Stone v.*

8  *Advance Am.*, 2009 WL 4722924, *3 (S.D. Cal. Dec. 4, 2009).  "Misconduct by class

9  counsel that creates a serious doubt that counsel will represent the class loyally

10  requires denial of class certification."  *Kulig*, 2014 WL 5017817 at *3.  For instance,

11  counsel's failure to communicate a settlement offer to the plaintiff, particularly one

12  that far exceeds the plaintiff's potential recovery, is misconduct warranting a finding

13  that counsel is not able to fairly and adequately represent the class.  *See id.* at **4-6.

14       Here, Cavalry presented a settlement offer to Mr. Lemberg that far exceeded the

15  amount Horton could be awarded in this case based on his individual claims.  *See*

16  Declaration of Tomio B. Narita in Support of Opposition to Motion for Class

17  Certification ("Narita  Decl."), at ¶ 3.  Mr. Lemberg flatly rejected the offer.  *See id.* at

18  ¶ 4.  Horton,  however, testified that he did not communicate with his counsel during

19  the period between when the offer was presented to his attorney and when his attorney

20  advised that the offer was rejected, because he was at sea, studying to obtain his Coast

21  Guard license.[31]  Similarly, Mr. Lemberg made a demand to settle Horton's claim on an

22  individual basis while Horton was unreachable at sea.  *See id.*  Counsel's failure to

23  communicate the offer to his client, and his making of an individual demand without

24

25

26  _____

    [31] Specifically, he did not communicate with his attorneys between April 23, 2014 and June 29,
27  2014.  *See* Topor Decl. at ¶ 2, Ex. A at 161:23-163:18, 165:5-170:18.  Strangely, one day after Mr.
    Lemberg rejected the offer without having communicated it to his client, he announced that he had been
28  "discharged" by his client.  *See* Narita Decl. at ¶ 5. How this occurred when Mr. Lemberg never spoke
    to his client remains a mystery.

1  consulting with his client, constitutes serious misconduct rendering him inadequate to

2  represent a class.  *See Kulig*, 2014 WL 5017817 at \*\*4-6.[32]

3     **D.     Horton Cannot Meet The Requirements Of Rule 23(b)(3)**

4     For the numerous reasons discussed above, the class is unmanageable.

5  Individual issues will predominate regarding whether (1) Cavalry made calls to

6  account holders in the proposed class, (2) account holders are called parties who have

7  standing, and (3) there was prior express consent to call account holders in the

8  proposed class members.  Beyond these myriad problems, there would be individual

9  issues raised regarding whether the account holders who have filed for bankruptcy

10 protection[33] have standing to pursue their claims, or whether any claims have been

11 released by the account holder, or whether the account holder is deceased.  *See* Perry

12 Decl. at ¶¶ 20-21, 24.  A class action is not the superior method for adjudicating this

13 case under Rule 23(b)(3).[34]

14    The predominance requirement "trains on the legal or factual questions that

15 qualify each class member's case as a genuine controversy, questions that preexist any

16 settlement, and tests whether proposed classes are sufficiently cohesive to warrant

17 adjudication by representation." *Deitz v. Comcast Corp.*, 2007 WL 2015440, \*6 (N.D.

18

---

19 [32]  In addition, Mr. Lemberg notes that he is admitted to practice in the United States District

20 Court for the Western District of Texas, *see* Doc. No. 90-2 at ¶ 2, but fails to disclose that he was
recently referred by a judge of that court to its Disciplinary Committee "for a review and appropriate

21 action, if any, regarding Mr. Lemberg's license to practice law in the Western District of Texas."  *See*
Narita Decl. at ¶ 6.

22

23 [33] There are over one hundred thousand account holders in Horton's proposed class who have
filed for bankruptcy protection, *see* Perry Decl. at ¶ 20, and if they failed to schedule a claim against

24 Cavalry, then they would lack standing to be a class member.  "[When a debtor] fail [s] properly to
schedule an asset, including a cause of action, that action continues to belong to the bankruptcy estate

25 and [does] not revert to [the debtor]." *Cusano v. Klein*, 264 F.3d 936, 945–46 (9th Cir.2001).

26 [34] *See, e.g., Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 (9th Cir. 2009) (Rule
23(b)(3) not met where proceeding as class would "require a fact-intensive, individual analysis of each

27 employee's exempt status"); *Zinser*, 253 F.3d at 1189 (affirming denial of certification:  where issues
in case "require the separate adjudication of each class member's individual claim or defense, a Rule

28 23(b)(3) action would be inappropriate.").

---

Cal. Jul. 11, 2007) (quoting *Amchem Prods., Inc.*, 521 U.S. at 623).  The Court "must identify the substantive issues raised by the cause of action and then inquire into the proof relevant to each issue." *In re Beer Distrib. Antitrust Litig.*, 188 F.R.D. 549, 556 (N.D. Cal. 1998).  As the Supreme Court has explained, the  predominance requirement is "far more demanding" than the "commonality requirement." *Amchem*, 521 U.S. at 624.

Courts across the country have routinely denied certification in TCPA cases such as this, where, among other things, "the Court would be required to engage in a class-member-specific-inquiry to determine whether each recipient consented to receiving calls on their cellphone [sic]." *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 106 (N.D. Ill. 2013).[35]  In *Jamison*, the court surveyed what it characterized

---

[35] *See Southwell Mortgage Investors Corp. of Ohio*, 2014 WL 3956699 at **5-6 ("Both of these provisions constitute 'consent defenses' and raise the specter of individualized inquiries which has historically proven fatal to attempts at class certification.  Where the issue of consent cannot be resolved on a classwide basis, the Court is unable to find that common issues of fact or law predominate."); *Fields*, 2013 WL 6073426 at *4 (plaintiff failed to show consent could be addressed with class-wide proof and thus failed to prove predominance); *Connelly*, 294 F.R.D. at 578 (denying certification where differing circumstances under which putative class members provided cell phone numbers were relevant to determination of prior express consent; "This diversity suggests that the issue of consent should be evaluated individually, rather than on a classwide basis."); *O'Connor v. Diversified Consultants, Inc.*, 2013 WL 2319342, **4-5 (E.D. Mo. May 28, 2013) ("An individual case by case inquiry will be necessary to determine whether the debtors in the proposed class consented to be contacted on their cell phones regarding their debt to U.S. Cellular by providing their cell number to U.S. Cellular.  Discovery into the debtor's agreements with U.S. Cellular will involve an individual inquiry into each plaintiff's agreement."); *Conrad v. General Motors Acceptance Corp.*, 283 F.R.D. 326, 329-30 (N.D. Tex. 2012) ("And, although [plaintiff] argues that the consent issue is subject to generalized proof by examining certain fields in [defendant's] database, his argument presumes that consent is denoted at all in [defendant's] database and that if it is, such information is correct. . . . Instead, as Ally argues, putative classmembers could have given their consent in a variety of different ways (and could have withdrawn and re-granted consent during the course of their business with Ally). . . . And, as in the case of Conrad, putative classmembers may argue that they never gave consent despite Ally's records to the contrary. . . . Thus, the consent issue would necessitate individual inquiries regarding each putative classmember's account and the circumstances surrounding each call or contact. Additionally, because this individual issue has the potential to separate classmembers from each other, the class lacks the cohesiveness necessary for the Court to certify a class under Rule 23(b)(2)."); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wy. 2011) (finding common questions did not predominate where "the TCPA claims will require extensive individual fact inquiries into whether each individual gave 'express consent' by providing their wireless number to the creditor

---

as "a split of opinion . . . on whether issues of individualized consent predominate over common questions of law or fact so as to prevent class certification," and extracted the following rule:

> [I]ssues of individualized consent predominate when a defendant sets forth specific evidence showing that a significant percentage of the putative class consented to receiving calls on their cellphone [sic]. However, if the defendants fails to set forth this specific evidence and instead only make vague assertions without consent, then individualized issues regarding consent will not predominate over common questions of law or fact so as to prevent class certification.

*Id.* at *14.[36]

---

during the transaction that resulted in the debt owed. . . . This will require an individual review of loan documents and other files related to the underlying debt obligations. These questions require individual inquiries that would predominate over the class action."); *GM Sign, Inc. v. Brinks Mfg. Co.*, 2011 WL 248511, **7-8 (N.D. Ill. Jan. 25, 2011) (plaintiff failed to demonstrate predominance where defendant introduced evidence it elicited consent from every recipient of challenged communication that was not already a customer; if court certified class, it would have to engage in "class-member-specific inquiry to determine whether each recipient did indeed give permission" to be contacted; "The relevant question is whether this inquiry means that individualized questions predominate over common questions of law or fact. The Court finds that, on the facts of this case, they do."); *Hicks v. Client Servs., Inc.*, 2008 WL 5479111, *8 (S.D. Fla. Dec. 11, 2008) (lack of commonality and predominance because consent was issue that would have to be determined on individual basis at trial).

[36] Even if the Court were to hold that Cavalry bears the burden of proving a lack of prior express consent, Horton still must "establish the Rule 23 factors" and "articulate why consent would not be an individualized issue." *Balthazor v. Central Credit Servs., Inc.*, 2012 WL 6725872, *4 (S.D. Fla. Dec. 27, 2012) (Plaintiff failed to establish commonality and predominance); *see also G.M. Sign, Inc.*, 2011 WL 248511 at *10 ("Plaintiff has failed to establish that the Court could determine the facts of consent and an existing business relationship largely, or solely, by reference to Defendant's practices alone."); *Hicks v. Client Servs., Inc.*, 2008 WL 5479111, **7-8 (S.D. Fla. Dec. 11, 2008) ("Plaintiff stresses that it is Defendant's burden to produce evidence of lack of consent. Like the court in *Gene & Gene [LLC v. Biopay LLC*, 541 F.3d 318, 327 (5th Cir. 2008)], we feel that it is irrelevant who has the burden. . . . Whether the burden is on the Plaintiff or the Defendant, ultimately consent is an issue that would have to be determined on an individual basis at trial."). Furthermore, "the need for individualized inquiries with respect to consent may still defeat predominance." *Chapman*, 2014 WL 840565 at *3, citing *Jamison*, 2013 WL 3872171 at *6 ("Individualized issues necessary to decide an affirmative defense may predominate so as to prevent class certification. For purposes of class certification, it is [plaintiff's] burden to prove that they do not." (citations omitted)). Even if prior express consent is an affirmative defense, "'an affirmative defense is not *per se* irrelevant to the predominance inquiry.'" *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008) (reversing certification in TCPA fax case). Rather, 'predominance of individual issues necessary to decide an affirmative defense may preclude class certification.' *Id.* (citation omitted)." *Donaca v. Dish Network, LLC*, _ F.R.D. _, 2014 WL 623396, *8 (D. Colo. Feb. 18, 2014).

---

Cavalry has presented specific evidence that common issues do not predominate, because the Court would need to make a multi-part inquiry to determine if an individual was a member of the class. First, it would need to determine that Cavalry actually made a call to cellular telephone number. Second, it would need to determine who was the regular user of the telephone. Third, it would need to determine that Cavalry did not have prior express consent to call the person. Fourth, it would need to determine that there was not some other reason to exclude the person from the class, such as a bankruptcy, a release or deceased status. Alone or together, these are all individual issues that predominate over each potential class member's claim. Horton has not carried his Rule 23(b)(3) burden of establishing that common issues predominate and that a class action is superior.

## III.   CONCLUSION

For the foregoing reasons, Cavalry respectfully requests that the Court deny the motion for class certification.


DATED:  October 31, 2014          SIMMONDS & NARITA LLP
                                  TOMIO B. NARITA
                                  JEFFREY A. TOPOR


                                  By:   s/Tomio B. Narita
                                        Tomio B. Narita
                                        Counsel for Defendant
                                        Cavalry Portfolio Services, LLC

**PROOF OF SERVICE**

I, Jeffrey A. Topor, hereby certify that:

I am employed in the City and County of San Francisco, California.  I am over the age of eighteen years and not a party to this action.  My business address is 44 Montgomery Street, Suite 3010, San Francisco, California 94104-4816.  I am counsel of record for the defendant in this action.

On October 31, 2014, I caused the **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S OPPOSITION TO MOTION FOR  CLASS CERTIFICATION** to be served upon the parties listed below via the Court's Electronic Filing System:

**VIA ECF**

Sergei Lemberg
slemberg@lemberglaw.com
Stephen Taylor
staylor@lemberglaw.com

Counsel for Plaintiff

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Francisco, California on this 31st day of October, 2014.


By:   s/Jeffrey A. Topor
      Jeffrey A. Topor
      Attorneys for defendant
      Cavalry Portfolio Services, LLC