Beth E. Terrell, CSB #178181
Email: bterrell@terrellmarshall.com
Adrienne D. McEntee, *Admitted Pro Hac Vice*
Email:  amcentee@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiff Cory Horton*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY HORTON, on behalf of himself and all others similarly situated, | |
| Plaintiff, | NO. 13-CV-00307-JAH (WVG) |
| v. | **PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS** |
| CAVALRY PORTFOLIO SERVICES, LLC, | |
| Defendant. | Complaint Filed:  February 7, 2013 |
| | DEMAND FOR JURY TRIAL |
| | Honorable John A. Houston |
| | DATE:          September 28, 2020 TIME:          2:30 p.m. COURTROOM:   13B |

KEVIN KREJCI, on behalf of himself and all others similarly situated,

    Plaintiff,

        v.

CAVALRY PORTFOLIO SERVICES, LLC,

    Defendant.

NO. 3:16-cv-00211-JAH-WVG

# TABLE OF CONTENTS

Page No.

I.  INTRODUCTION .......................................................................... 1

II.  ISSUE TO BE DECIDED .............................................................. 2

III.  STATEMENT OF FACTS ............................................................. 2

    A.  Plaintiffs and their counsel vigorously litigated on behalf
        of the Settlement Class ...................................................... 2

    B.  Plaintiffs and their counsel negotiated an outstanding
        settlement for the Settlement Class ................................... 3

    C.  The Court granted preliminary approval of the proposed
        settlement ............................................................................ 5

IV.  AUTHORITY AND ARGUMENT ................................................... 5

    A.  The percentage-of-the-fund method is the appropriate
        method for determining a reasonable attorneys' fee in
        this case ................................................................................ 5

        1.  A fee award of 8% of the total settlement value,
            or 32.5% of the Cash Fund, will fairly compensate
            Class Counsel for their work on behalf of the
            Settlement Class ......................................................... 8

            a.  Class Counsel achieved an excellent settlement
                for the class ........................................................ 9

            b.  Class Counsel assumed a significant risk of no
                recovery ............................................................. 10

c.   Class Counsel's skill and quality of work delivered a substantial recovery for the class beyond the cash fund ................................ 12

d.   Awards in similar cases show that the requested fee is reasonable ...................................... 13

2.   A lodestar crosscheck confirms that the requested fee is reasonable ........................................................ 14

a.   Class Counsel's rates are consistent with rates in the community for similar work performed by attorneys of comparable skill, experience, and reputation .......................................... 15

b.   Class Counsel expended a reasonable number of hours litigating the case ............................................ 17

c.   A multiplier is reasonable and appropriate .............. 18

B.   Class Counsel's litigation costs were necessarily and reasonably incurred ........................................................ 21

C.   Plaintiffs request incentive awards of $10,000 ............................ 21

V.   CONCLUSION .......................................................................... 23

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Beaver v. Tarsadia Hotels*,
No. 11-CV-01842-GPC-KSC, 2017 WL 4310707 (S.D. Cal.
Sept. 28, 2017)................................................................................ 8, 19, 23

*Bebchick v. Wash. Metro. Area Transit Comm'n*,
805 F.2d 396 (D.C. Cir. 1986) .................................................... 13

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ..................................................................... 5

*Bottoni v. Sallie Mae, Inc.*,
No. C 10-03602 LB, 2013 WL 12312794 (N.D. Cal. Nov. 21, 2013) .......... 14

*Clarke v. Insight Glob., Inc.*,
No. 13-CV-0357-H (BLM), 2015 WL 13828417 (S.D. Cal.
Jan. 5, 2015)......................................................................... 8, 9

*Contreras v. Performance Food Grp., Inc.*,
No. 4:14-CV-03380-PJH, 2016 WL 9138157 (N.D. Cal.
May 4, 2016) ........................................................................ 23

*Cosgrove v. Citizens Auto. Fin., Inc.*,
CIV.A. 09-1095, 2011 WL 3740809 (E.D. Pa. Aug. 25, 2011) ................... 14

*Couser v. Comenity Bank*,
125 F. Supp. 3d 1034 (S.D. Cal. 2015) ................................... 10, 19

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D Pa. 2000) ................................................ 14

*Dakota Med., Inc. v. RehabCare Grp., Inc.*,
No. 114CV02081DAD, 2017 WL 4180497 (E.D. Cal.
Sept. 21, 2017) ................................................................................. 13, 14

*del Toro Lopez v. Uber Techs., Inc.*,
No. 17-cv-06255-YGR, 2018 WL 5982506 (N.D. Cal.
Nov. 14, 2018) ........................................................................................ 23

*Destefano v. Zynga, Inc.*,
Case No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal.
Feb. 11, 2016) ................................................................................. 11, 13

*Glass v. UBS Fin. Servs., Inc.*,
331 F. App'x 452 (9th Cir. 2009) ............................................................. 5

*Gonzalez v. City of Maywood*,
729 F.3d 1196 (9th Cir. 2013) ............................................................... 15

*Gutierrez-Rodriguez v. R.M. Galicia, Inc.*,
Case No. 16-CV-00182-H-BLM, 2018 WL 1470198 (S.D. Cal.
March 26, 2018) ...................................................................................... 13

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................. 7

*Hopkins v. Stryker Sales Corp.*,
No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ............ 18

*Hunter v. Nature's Way Prods., LLC*,
No. 3:16-cv-532-WQH-AGS, 2020 WL 71160 (S.D. Cal.
Jan. 6, 2020) ........................................................................................... 16

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ................................................... 6, 7, 8, 15

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
109 F.3d 602 (9th Cir. 1997) ................................................................... 6

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...................................................... 21

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...................................................................... 8

*In re Nat'l Collegiate Athletic Ass'n*,
   No. 4:14-md-2541-CW, 2017 WL 6040065 (N.D. Cal.
   Dec. 6, 2017) ............................................................................................... 23

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................. 6, 8, 10, 11, 12

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ............................................................. 10, 21

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...................................................................... 8

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ............................................................. 6, 11

*Jenson v. First Tr. Corp.*,
   No. CV 05-3124 ABC, 2008 WL 11338161 (C.D. Cal. June 9, 2008).......... 10

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) ...................................................................... 20

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009)........................ 13

*Lofton v. Verizon Wireless (VAW) LLC*,
   No. C 13-05665 YGR, 2016 WL 7985253 (N.D. Cal.
   May 27, 2016) ............................................................................... 11, 13, 23

*Makaeff v. Trump Univ., LLC*,
   No. 10cv1940 GPC (WVG), 2015 WL 1579000 (S.D. Cal.
   Apr. 9, 2015) ........................................................................... 16

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ................................................. 15

*Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*,
   No. 15-cv-595-BAS-MDD, 2016 WL 1573319 (S.D. Cal.
   Apr. 18, 2016) ......................................................................... 16

*Pan v. Qualcomm Inc.*,
   No. 16-CV-01885-JLS-DHB, 2017 WL 3252212 (S.D. Cal.
   July 31, 2017) .......................................................................... 20

*Rodriguez v. W. Publishing*,
   563 F.3d 948 (9th Cir. 2009) ............................................. 21, 22

*Rose v. Bank of Am. Corp.*,
   12 Civ. 04009, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) .................... 10

*Smith v. CRST Van Expedited, Inc.*,
   No. 10-CV-1116- IEG WMC, 2013 WL 163293 (S.D. Cal.
   Jan. 14, 2013) ............................................................................ 9

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................... 5, 6, 21, 22

*Steiner v. Am. Broad Co., Inc.*,
   248 F. App'x 780 (9th Cir. 2007) .............................................. 19

*Steinfeld v. Discover Fin. Servs.*,
   No. 3:12-cv-01118-JSW, 2014 WL 1309352 (N.D. Cal.
   Mar. 10, 2014) ......................................................................... 10

*Vandervort v. Balboa Capital Corp.*,
   8 F. Supp. 3d 1200 (C.D. Cal. 2014) ......................................... 13

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ............................................................ 20

*Vasquez v. Kraft Heinz Foods Co.,*
    No. 3:16-CV-2749-WQH-BLM, 2020 WL 1550234 (S.D. Cal.
    Apr. 1, 2020) ............................................................................................ 15

*Vincent v. Hughes Air W.,*
    557 F.2d 759 (9th Cir. 1977) ....................................................................... 21

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) .............................................................*Passim*

*Welch v. Metro. Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) ............................................................... 16, 17

## OTHER AUTHORITIES

John Leubsdorf, *The Contingency Factor in Attorney Fee Awards*,
    90 Yale L.J. 473 (1981) .............................................................................. 18

Richard A. Posner, Economic Analysis of Law 783 (8th ed. 2011)...................... 18

William B. Rubenstein, *Why the Percentage Method?*, 2 Class Action
    Attorney Fee Digest 93 (March 2008)......................................................... 6

William B. Rubenstein, 5 Newberg on Class Actions § 15:91
    (5th ed. Nov. 2018 update)....................................................................... 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.  INTRODUCTION

This consolidated TCPA class action arises out of telephone calls Cavalry made to the cell phones of Plaintiffs and other class members associated with more than 1 million accounts, in the course of attempting to collect allegedly unpaid debts. Plaintiffs allege that Cavalry made these calls using "automatic telephone dialing systems" as defined in 47 U.S.C. § 227(a)(1), in violation of the Telephone Consumer Protection Act (47 U.S.C. § 227) ("TCPA").

The case settled after more than six years of fierce litigation. Although the parties engaged in mediation earlier in the case, settlement negotiations were inconclusive. Cavalry lodged a vigorous defense, requiring Plaintiffs and Class Counsel to aggressively prosecute their claims. The parties did not renew settlement discussions until after they had fully briefed the motion for class certification and cross-motions for summary judgment. Even then, resolution was not swift. The parties required two additional full-day mediation sessions. Months later, they eventually settled.

The settlement provides significant relief for Settlement Class Members. Cavalry must pay $6,150,000 into a non-reversionary common fund and provide up to $18,000,000 in debt relief. To compensate them for their efforts, Class Counsel request a fee award of $2,000,000, which recognizes the excellent result they obtained for the Settlement Class given the risks they faced. A lodestar crosscheck confirms the reasonableness of this request.

Finally, Class Counsel also respectfully request reimbursement of $85,349.64 in litigation costs, and request that the Court approve incentive awards to each Plaintiff in the amount of $10,000 for their work on behalf of the Settlement Class. Plaintiffs have actively participated in this action. Mr. Horton

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

- 1 -              13-CV-00307-JAH (WVG)

responded to written discovery requests and sat for a deposition. And both Plaintiffs assisted in counsel's investigation and settlement discussions. Incentive awards of $10,000 each for their efforts are reasonable and consistent with Ninth Circuit precedent.

## II. ISSUE TO BE DECIDED

Whether the requested attorneys' fees, costs, and incentive awards are reasonable and should be awarded.

## III. STATEMENT OF FACTS

**A.    Plaintiffs and their counsel vigorously litigated on behalf of the Settlement Class.**

Cory Horton filed a class action complaint alleging that Cavalry is liable under the TCPA for calls it made to his cell phone using an automatic telephone dialing system in violation of 47 U.S.C. § 227(b)(1)(A). Declaration of Sergei Lemberg ("Lemberg Decl.") ¶ 10. Three years later, Kevin Krejci brought a second class action against Cavalry alleging similar claims. *Id*. ¶ 11. Both allege that Cavalry made calls to their cell phones without their prior express consent while attempting to collect debts.

The parties engaged in substantial discovery during the litigation. They served and responded to written discovery requests and reviewed thousands of pages of documents. ECF 289-1 ¶¶ 9-10; ECF 289-3 ¶¶ 11-12; Lemberg Decl. ¶ 12. Plaintiffs took four depositions of Cavalry, including a redeposition of a 30(b)(6) designee following a motion to compel, and Cavalry deposed Mr. Horton. Lemberg Decl. ¶ 12. Plaintiffs engaged in third party discovery of Mr. Horton's original lender, Navy Federal Credit Union, and TracFone Wireless for telephone records. *Id*. Plaintiffs also retained two experts. *Id*. Randall Snyder

1    analyzed the systems Cavalry used to make calls and determined they were

2    automatic dialing systems. *Id*. Anya Verkhovskaya analyzed the calling data

3    Cavalry produced records to determine the number of calls Cavalry made to

4    unique telephone numbers, and what percentage of those numbers were cell

5    phones. *Id*. Plaintiffs defended the depositions of both experts and deposed

6    Cavalry's expert, Kenneth Sponsler. *Id*.

7         In addition to discovery, the parties engaged in extensive substantive

8    motion practice. Plaintiff Horton moved for class certification, and responded to

9    Cavalry's motion for summary judgment, and the parties moved to strike one

10   another's experts. ECF 289-3 ¶ 13; Lemberg Decl. 12. Mr. Horton also

11   successfully defended and won summary judgment on Cavalry's debt collection

12   counterclaim. *Id*. While Cavalry's summary judgment motion was pending, the

13   FCC released an order addressing what type of equipment qualifies as an

14   autodialer, which was appealed. ECF 289-1 ¶ 11; Declaration of Adrienne D.

15   McEntee ("McEntee Decl.") ¶ 2. As a result, the Court stayed proceedings. *Id*.

16   After the D.C. Circuit issued its decision in *ACA Int'l v. FCC*, 885 F.3d 687, 693

17   (D.C. Cir. 2018), the Court lifted the stay and the parties filed cross motions for

18   summary judgment on whether Cavalry's systems are automatic telephone

19   dialing systems. *Id*. Those motions remain pending.

20   **B.    Plaintiffs and their counsel negotiated an outstanding settlement**

21        **for the Settlement Class.**

22        While the first round of dispositive motions was pending, the parties

23   participated in a mediation with Hon. Herbert B. Hoffman, Ret. ECF 289-3 ¶ 14;

24   Lemberg Decl. ¶ 12. After the stay was lifted and the parties had fully briefed

25   cross-motions for partial summary judgment, the parties renewed settlement

26   negotiations. ECF 289-1 ¶ 12; ECF 289-3 ¶ 17; McEntee Decl. ¶ 2; Lemberg Decl.

27

28

¶ 12. They participated in two full day mediations with Hon. Leo S. Papas, Ret. *Id*. Neither resulted in settlement. *Id*. However, the parties continued negotiations and several months after their third mediation were able to reach agreement on the terms of a settlement. ECF 289-2 (Settlement Agreement).

The proposed settlement requires Cavalry to provide Settlement Class Members with more than $24 million in settlement benefits, comprised of a Debt Relief Fund of up to $18,000,000 and a non-reversionary Cash Fund of $6,150,000. ECF 289-2 §§ 2.7, 2.21, 4.1, 4.2. Settlement Class Members with Open Accounts who submit valid claims for debt relief will receive their *pro rata* share of $18,000,000 in debt relief, up to $599 each. *Id*. §§ 4.1, 4.3. Settlement Class Members with Closed and Open Accounts who submit valid claims for cash will receive cash awards from the Cash Fund on a *pro rata* basis after payment of administrative costs, incentive awards, attorneys' fees, and litigation costs approved by the Court. §§ 4.2.3, 4.3. To participate, a Settlement Class Member need only complete a simple Claim Form with his or her name, contact information, and the telephone number that received the call(s). *Id*., Exh. D.

Cavalry identified 1,035,232 Open and Closed accounts associated with Settlement Class Members to whom claims administrator JND provided notice. ECF 289-4. To date, JND has received 54,791 claims. McEntee Decl. ¶ 21. Their early analysis shows that at least 3,705 Settlement Class Members with Open Accounts have submitted claims for debt relief, which represents $2,219.295 of the $18 million in debt relief available under the settlement. *Id*. Settlement Class Members still have a month—until July 29, 2020—to submit claims, opt out, or object. *Id*. If 5% of Settlement Class Members with Open Accounts file claims for debt relief, each will receive debt relief of approximately $500. ECF 289-1 ¶¶ 19-

21. If 10% of Settlement Class Members (whether they have Open or Closed Accounts) file claims for cash, each will receive approximately $30. *Id*.

**C.    The Court granted preliminary approval of the proposed settlement.**

Plaintiffs filed their unopposed motion for preliminary approval of the proposed settlement on February 21, 2020. ECF 289. The Court granted preliminary approval of the proposed settlement on April 14, 2020. ECF 292.

### IV.  AUTHORITY AND ARGUMENT

**A.    The percentage-of-the-fund method is the appropriate method for determining a reasonable attorneys' fee in this case.**

The common fund doctrine is an equitable exception to the American rule that litigants must bear their own attorneys' fees. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). It is well settled that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Id.* The "common fund" doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id.* A court with jurisdiction over the fund can "prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.* "Ninth Circuit jurisprudence … permits the application of common fund principles where—as in the present case—the class of beneficiaries is identifiable and the benefits can be traced in order to allocate the fees to the class." *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 457 (9th Cir. 2009). In such cases, "the common fund doctrine ensures that each member of the winning party contributes proportionately to the payment of attorneys' fees." *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir.

2003); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("those who benefit in the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it").

Courts in the Ninth Circuit have discretion to award attorneys' fees using either the percentage of the fund method or the lodestar method when settlement of a class action creates a common fund. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002). The method a district court chooses to use, and its application of that method, must achieve a reasonable result. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result."). As the Ninth Circuit has instructed, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997).

The Ninth Circuit and district courts in this Circuit have recognized that the percentage-of-the-fund method is the appropriate method for calculating fees when counsel's effort has created a common fund. *See, e.g., In re Bluetooth*, 654 F.3d at 942 ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (observing that "use of the percentage method in common fund cases appears to be dominant" and discussing its advantages over the lodestar method); *see also* William B. Rubenstein, *Why the Percentage Method?*, 2 Class Action Attorney Fee Digest 93 (March 2008) ("[U]nder the percentage method,

counsel has an interest in generating as large a recovery for the class as possible, as her fee increases with the class's take, while keeping her hours to the minimum necessary to do the job effectively.").[1]

The lodestar method, by contrast, is typically used when the value of the class's recovery is difficult to determine. *See In re Bluetooth*, 654 F.3d at 941 (courts use the lodestar method when the relief is "primarily injunctive in nature and thus not easily monetized"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (noting that courts use the lodestar method when "there is no way to gauge the net value of the settlement or any percentage thereof"). Courts also use the lodestar method to determine a reasonable fee in cases involving a fee-shifting statute ("such as federal civil rights, securities, antitrust, copyright, and patent acts"). *In re Bluetooth*, 654 F.3d at 941. The lodestar method, by contrast, has been criticized as encouraging lawyers to prolong the litigation and discourage early settlements that would benefit the class. *See Vizcaino*, 290 F.3d at 1050 n.5 ("[I]t is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement").

The percentage-of-the-fund method is the appropriate method for determining a reasonable fee in this case. The benefit to the Settlement Class is easily quantified. Class Counsel's efforts resulted in settlement relief of up to $24,150,000, comprised of a $18,000,000 in Debt Relief Fund and a non-reversionary $6,150,000 Cash Fund. All of the Cash Fund will be distributed to

---

[1] Available at
http://www.billrubenstein.com/Downloads/Rubenstein%20_Mar08_column.pdf

Settlement Class Members who submitted claims for cash after settlement expenses, including administration expenses, Court-approved fees and costs, and Court-approved incentive awards, are deducted. Up to $599 will be credited to each Settlement Class Members who submitted claims for debt relief. Using the percentage method in this case will recognize Class Counsel's efficiency and their efforts to achieve the highest possible recovery for the Settlement Class.

1. <u>A fee award of 8% of the total settlement value, or 32.5% of the Cash Fund, will fairly compensate Class Counsel for their work on behalf of the Settlement Class.</u>

The Ninth Circuit has held that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage-of-the-fund method. *Vizcaino*, 290 F.3d at 1047; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). While the 25% benchmark is the starting point for the analysis, "in most common fund cases, the award exceeds [the] benchmark." *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d at 1047 (citations omitted).

District courts in this circuit have routinely awarded fees of one-third of the common fund or higher after considering the particular facts and circumstances of each case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming an award of one-third of total recovery); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (noting 33% award "for attorneys' fees is justified because of the complexity of the issues and the risks"); *Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *17 (S.D. Cal. Sept. 28, 2017) (approving 33% fee award); *Clarke v. Insight

*Glob., Inc.*, No. 13-CV-0357-H (BLM), 2015 WL 13828417, at *7 (S.D. Cal. Jan. 5, 2015) (approving 33% fee award); *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116- IEG WMC, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) (approving fee equal to 33% of cash payment but only 7.5% of total settlement value).

The percentage may be adjusted up or down based on the court's consideration of "all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The relevant circumstances include (1) the results achieved for the class, (2) the risk counsel assumed, (3) the skill required and the quality of the work, (4) the contingent nature of the fee, (5) whether the fee is above or below the market rate, and (6) awards in similar cases. *Id.* at 1048-50. Consideration of the relevant circumstances supports a fee award of $2,000,000, which is 8% of the total settlement value, and 32.5% of the Cash Fund.

### a.   *Class Counsel achieved an excellent settlement for the class.*

The $24,150,000 settlement value amount reflects the risks Plaintiffs faced in establishing that Cavalry is liable under the TCPA because the systems it used to place calls to Settlement Class Members are automatic telephone dialing systems, and overcoming Cavalry's contention that it had consent to call Settlement Class Members, an impediment to class certification. A loss on either issue could have prevented the Settlement Class from recovering anything. Under the settlement, Settlement Class Members with Open Accounts who file claims for debt relief will likely receive debt relief of $500. ECF 289-1 ¶¶ 19-21 (based on 5% of those with Open Accounts). Settlement Class Members who file claims for cash will likely receive $30 (based on 10% of all Settlement Class Members). *Id*. This is a highly favorable outcome for the class in any TCPA case.

*See In re Omnivision*, 559 F. Supp. 2d at 1046 ("The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award.").

The settlement's cash component alone is in line with many other TCPA settlements in this circuit and around the country, including cases approved by district courts in California. *See In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*, No. 11MD02295 JAH - BGS, ECF 494 & ECF 426-1 at 24 (S.D. Cal. 2017) (approving $30-per-claimant settlement); *Adams v. AllianceOne Receivables Mgt., Inc.*, No. 3:08-cv-00248, ECF 137, 116 at 7, & 109 at 10–11 (S.D. Cal. 2012) (approving $40-per-claimant settlement); *Couser v. Comenity Bank,* 125 F. Supp. 3d 1034, 1043 (S.D. Cal. 2015) (approximately $13.75 per claimant); *Steinfeld v. Discover Fin. Servs.*, No. 3:12-cv-01118-JSW, 2014 WL 1309352, at *6 (N.D. Cal. Mar. 10, 2014) (payments estimated to be between $20 and $40); *Rose v. Bank of Am. Corp.*, 12 Civ. 04009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving $20.00 to $40.00 per claimant).

This factor weighs in favor of Class Counsel's fee request.

### b. Class Counsel assumed a significant risk of no recovery.

Class Counsel's fee request also reflects that the case was risky and handled on a contingency basis. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015); *Vizcaino*, 290 F.3d at 1048; *see also Jenson v. First Tr. Corp.*, No. CV 05-3124 ABC, 2008 WL 11338161, at *12 (C.D. Cal. June 9, 2008) ("Uncertainty that *any* recovery ultimately would be obtained is a highly relevant consideration. Indeed, the risks assumed by Counsel, particularly the risk of non-payment or reimbursement of expenses, is important to determining a proper fee award." (internal citation omitted)).

Class Counsel represented Plaintiffs and the Settlement Class entirely on a contingent basis. Courts recognize that "[w]ith respect to the contingent nature of the litigation … courts tend to find above-market-value fee awards more appropriate in this context given the need to encourage counsel to take on contingency-fee cases for plaintiffs who otherwise could not afford to pay hourly fees." *Destefano v. Zynga, Inc.,* Case No. 12-cv-04007-JSC, 2016 WL 537946, at *18 (N.D. Cal. Feb. 11, 2016) (citing *In re Wash. Public Power*, 19 F.3d at 1299). "This is especially true where, as here, class counsel has significant experience in the particular type of litigation at issue; indeed, in such contexts, courts have awarded an even higher 33 percent fee award." *Id.* (citing *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, et al., 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005)); *see also* ECF 289-1 ¶¶ 2-8; ECF 289-3 ¶¶ 3-9.

Moreover, Class Counsel faced the very real risk they would not recover any fees and costs. *Lofton v. Verizon Wireless (VAW) LLC*, No. C 13-05665 YGR, 2016 WL 7985253, at *1 (N.D. Cal. May 27, 2016) (awarding fees above the benchmark where, absent settlement, "there would remain a significant risk that the Settlement Class may have recovered less or nothing…"). "The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1046–47. While Plaintiffs believed they have a case for liability, success on this score was not guaranteed. ECF 289-1 ¶ 25. Cavalry denies that it can be held liable for the calls it made to Settlement Class Members because, it contends, the systems used to make the calls are not automatic telephone dialing systems. *Id*. If the Court agreed with Cavalry, Plaintiffs would lose on the merits. *Id*. Cavalry also contends Settlement Class Members are not entitled to recover because they consented to be

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS
- 11 -                    13-CV-00307-JAH (WVG)

1   contacted on their cell phones by providing their numbers to Cavalry or to the
2   original creditor. *Id*. ¶ 27. Although consent is an affirmative defense for which
3   Cavalry carries the burden of proof, if the trier of fact disagreed with Plaintiffs on
4   this issue, the Settlement Class would receive nothing. *Id*. Evidence of consent
5   could also defeat Plaintiffs' motion to certify under Rule 23(b)(3). *Id*. ¶ 28.

6         These risks weigh in favor of Class Counsel's fee request.

7               ***c.   Class Counsel's skill and quality of work delivered a
8                     substantial recovery for the class beyond the cash fund.***

9         "The 'prosecution and management of a complex national class action
10  requires unique legal skills and abilities.'" *Omnivision*, 559 F. Supp. 2d at 1047
11  (quoting *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987)). Class
12  Counsel were able to litigate this case efficiently because of their experience in
13  litigating TCPA claims in class action cases. Class Counsel have litigated dozens of
14  TCPA cases, achieving a successful resolution in many. *See* ECF 289-1 ¶¶ 2-8; ECF
15  289-3 ¶¶ 2-9. Class Counsel relied on their depth of experience with TCPA claims
16  and class action litigation to conduct vigorous discovery, brief class certification
17  and summary judgment issues, and negotiate a settlement that capitalized on
18  the claims' strengths while taking into account the risks of continued litigation.

19        Moreover, "[w]here class counsel's performance generates benefits
20  beyond a cash settlement fund, an upward adjustment may be warranted." *See*
21  *Vizcaino*, 290 F.3d at 1049. The settlement provides Settlement Class Members
22  who have Open Accounts with the option to obtain $18 million in debt relief
23  rather than cash, up to $599 per claimant. Those with Open Accounts have
24  already claimed $2,219.295 of the $18 million in debt relief available under the
25  settlement. With a month left in the claims period, Plaintiffs anticipate this
26  number will rise. The debt relief offered under the settlement benefits the public

27
28               PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS,
                        AND INCENTIVE AWARDS
                  - 12 -          13-CV-00307-JAH (WVG)

and is the type of non-monetary benefit courts find relevant in analyzing the reasonableness of a fee request. *Vizcaino*, 290 F.3d at 1049 (citing *In re Pac. Enter. Sec. Litig.,* 47 F.3d 373, 379 (9th Cir. 1995) (considering "nonmonetary benefits in the derivative settlement"); *Bebchick v. Wash. Metro. Area Transit Comm'n*, 805 F.2d 396, 408 (D.C. Cir. 1986) (allowing upward adjustment to lodestar to reflect benefits to public from litigation)).

Finally, "[t]he quality of opposing counsel is also relevant to the quality and skill that class counsel provided." *Destefano*, 2016 WL 537946, at *17. Class Counsel's ability to negotiate a favorable settlement despite the vigorous opposition of Cavalry's counsel supports their fee request. *See, e.g.*, *Lofton*, 2016 WL 7985253, at *1 (the "risks of class litigation against an able defendant well able to defend itself vigorously" support an upward adjustment in the fee award); *Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) (where defense counsel "understood the legal uncertainties in this case[] and were in a position to mount a vigorous defense," the favorable settlement was a "testament to Plaintiffs' counsel's skill").

### d.   Awards in similar cases show that the requested fee is reasonable.

An award of 32.5% of the Cash Fund—without considering the value of the Debt Relief Fund—is consistent with fee awards in other TCPA class settlements in this circuit and in federal courts around the country. *See Gutierrez-Rodriguez v. R.M. Galicia, Inc.,* Case No. 16-CV-00182-H-BLM, 2018 WL 1470198 (S.D. Cal. March 26, 2018) (approving award of fees and costs of 30%, based on excellent results achieved, risks of litigation, high quality of work and contingency basis); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (finding "a 33% award of fees and costs is warranted"); *Dakota*

*Med., Inc. v. RehabCare Grp., Inc.*, No. 114CV02081DAD, 2017 WL 4180497, at *9 (E.D. Cal. Sept. 21, 2017) (approving "an award of one-third of the $25 million settlement fund, or $8,333,333").

When the $18 million of available Debt Relief is included, Class Counsel's fee request is equal to just 8% of the total settlement, which is well below the 25% benchmark. Courts in the Ninth Circuit and elsewhere "have recognized the value of debt relief and included it as part of the settlement fund." *Bottoni v. Sallie Mae, Inc.*, No. C 10-03602 LB, 2013 WL 12312794, at *7 (N.D. Cal. Nov. 21, 2013). For example, in *Smith,* a court in this district awarded fees which constituted "33 1/3% of the cash payment but only 7.5% of the total $11,650,000 financial value of the settlement," concluding that the percentages compare "favorably" with the federal benchmark of 25%. 2013 WL 163293, at *5; *see also Cosgrove v. Citizens Auto. Fin., Inc*., CIV.A. 09-1095, 2011 WL 3740809 (E.D. Pa. Aug. 25, 2011) (finding debt forgiveness provides a valuable award to class members that, unlike a nonmonetary award such as a coupon, does not require careful scrutiny to ensure it has value to the class); *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 147 (E.D Pa. 2000) (including $1.3 million in delinquent loan forgiveness in the value of settlement fund for purposes of calculating class counsel's fee award under the percentage-of-recovery method).

Counsel's request for $2,000,000 in attorneys' fees, which amounts to approximately 8% of the estimated $24 million value of the settlement, is reasonable.

2.   A lodestar crosscheck confirms that the requested fee is reasonable.

In the Ninth Circuit, courts may use a rough calculation of the lodestar as a crosscheck to assess the reasonableness of an award based on the percentage

method. *Vizcaino*, 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award."); *see also Glass*, 331 F. App'x at 456-57 (affirming a fee award of 25% of a settlement fund with an "informal" lodestar crosscheck and despite "the relatively low time-commitment by plaintiff's counsel" because "the district court did not abuse its discretion in giving weight to other factors, such as the results achieved for the class and the favorable timing of the settlement"). Courts use a two-step process in applying the lodestar method. First, the court calculates the "lodestar figure" by multiplying the number of hours reasonably expended by a reasonable rate. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Once the lodestar is determined, the amount may be adjusted to account for several factors, such as the benefit obtained for the class, the risk of nonpayment, the complexity and novelty of the issues presented, and awards in similar cases. *See In re Bluetooth*, 654 F.3d at 942. Foremost among the considerations is the benefit obtained for the class." *Id.*

>   ### a. Class Counsel's rates are consistent with rates in the community for similar work performed by attorneys of comparable skill, experience, and reputation.

In determining a reasonable hourly rate, courts look at the prevailing market rates in the relevant community, which is the forum in which the district court sits. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). In this district, courts have approved hourly rates up to $900. *See Vasquez v. Kraft Heinz Foods Co.,* No. 3:16-CV-2749-WQH-BLM, 2020 WL 1550234, at *7 (S.D. Cal. Apr. 1, 2020) (finding rates for paralegals and attorneys, ranging from $175 per hour for paralegals, $325 per hour for a second-year associate to $900 per hour

1    for a forty-sixth-year partner were reasonable); *Hunter v. Nature's Way Prods.,*

2    *LLC,* No. 3:16-cv-532-WQH-AGS, 2020 WL 71160, at *7 (S.D. Cal. Jan. 6, 2020)

3    (finding hourly rates ranging from $500 to $750 reasonable); *In re Portfolio*

4    *Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig*., No. 11MD02295 JAH – BGS,

5    2017 WL 10777695, at *2, ECF 427-1 at 23-24 (finding hourly rates of $290 to

6    $750 reasonable); *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-

7    cv-595-BAS-MDD, 2016 WL 1573319, at *2 (S.D. Cal. Apr. 18, 2016) (finding

8    hourly rates of $400 to $725 reasonable); *Makaeff v. Trump Univ., LLC*, No.

9    10cv1940 GPC (WVG), 2015 WL 1579000, at * (S.D. Cal. Apr. 9, 2015) (finding

10   hourly rates up to $825 reasonable).

11          Class Counsel have provided the Court with declarations describing the

12   basis for their hourly rates, including their education, legal experience, and

13   reputation in the legal community. Counsel set their rates for attorneys and staff

14   members based on a variety of factors, including, among others: the experience,

15   skill and sophistication required for the types of legal services typically

16   performed; the rates customarily charged in the markets where legal services

17   are typically performed; and the experience, reputation and ability of the

18   attorneys and staff members. *See* McEntee Decl. ¶¶ 3-12, 17; Lemberg Decl.

19   ¶¶ 3-9, 17-21; Across firms, the rates Class Counsel charged for attorneys and

20   staff members working on this matter ranged from $200.00 to $775.00. McEntee

21   Decl. ¶ 12; Lemberg Decl. ¶ 15. Courts have found these rates to be reasonable

22   in numerous class action cases. McEntee Decl. ¶¶ 17-18; Lemberg Decl. ¶ 22.

23   Because counsel's hourly rates are in line with rates approved in similar cases in

24   this district, counsel's hourly rates are reasonable and appropriate for

25   calculating the lodestar. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th

26

27

28

Cir. 2007) (affidavits by plaintiffs' counsel and fee awards in other cases are sufficient evidence of prevailing market rates).

> **b.      Class Counsel expended a reasonable number of hours litigating the case.**

The number of hours that Class Counsel devoted to investigation, discovery, motion practice, and achieving a favorable settlement is reasonable. Since the inception of this case more than six years ago, Class Counsel have worked diligently to prosecute this consolidated action on behalf of the Settlement Class.

Counsel served and responded to written discovery requests, produced and reviewed thousands of pages of documents, and took multiple depositions of Cavalry, a third party, and Cavalry's expert. ECF 289-3 ¶ 12. In total, Plaintiffs took or defended nine depositions. Lemberg Decl. ¶ 12. Class Counsel moved for class certification, filed two motions for summary judgment, responded to two motions for summary judgment, opposed Cavalry's motion to exclude Plaintiffs' experts, and briefed multiple motions to compel discovery. ECF 289-3 ¶¶ 12-13; ECF 289-1 ¶ 12; Lemberg Decl. ¶ 12; McEntee Decl. ¶ 2. Pending a summary judgment ruling, the parties attended two mediations and afterward negotiated with Cavalry for months until the parties were finally able to settle. ECF 289-3 ¶ 17; ECF 289-1¶ 12; Lemberg Decl. ¶ 12; McEntee Decl. ¶ 2.

In all, Class Counsel dedicated over 2,740 hours to the investigation, development, litigation, and resolution of this case. *See* McEntee Decl. ¶ 12; Lemberg Decl. ¶ 15. This total excludes time that Class Counsel removed as administrative, that did not benefit the Settlement Class, or that was arguably excessive. McEntee Decl. ¶ 14; Lemberg Decl. ¶ 15. As in every case, counsel will spend additional hours to see this case through to final resolution, including the

1   work necessary to prepare the motion for final approval, attend the hearing on

2   final approval, and ensure the claims process is properly carried out. Class

3   Counsel's total lodestar, which does not include the time incurred to prepare

4   this motion, is $1,517,588. *Id.*

5                    ***c.     A multiplier is reasonable and appropriate.***

6           After determining the lodestar, courts consider the appropriate multiplier

7   to apply. The multiplier can be determined by dividing the total fees sought by

8   the lodestar. *See Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL

9   496358, at *4 (N.D. Cal. Feb. 6, 2013). "The purpose of this multiplier is to

10  account for the risk Class Counsel assumes when they take on a contingent-fee

11  cases." *Id.* (citation omitted). Multipliers are commonplace in attorneys' fee

12  awards in class actions, particularly when the lodestar method is used to cross-

13  check a percentage-of-the-fund fee. *See* Richard A. Posner, Economic Analysis of

14  Law 783 (8th ed. 2011) ("A contingent fee must be higher than a fee for the

15  same legal services paid as or after they are performed. The contingent fee

16  compensates the lawyer not only for the legal services he renders but for the

17  loan of those services. The implicit interest rate on such a loan is high because

18  the risk of default (the loss of the case, which cancels the client's debt to the

19  lawyer) is much higher than in the case of conventional loans, and the total

20  amount of interest is large not only because the interest rate is high but because

21  the loan may be outstanding for years—and with no periodic part payment, a

22  device for reducing the risk borne by the ordinary lender."); *see also* John

23  Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473, 480

24  (1981) ("A lawyer who both bears the risk of not being paid and provides legal

25  services is not receiving the fair market value of his work if he is paid only for the

26

27

28

second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.").

Courts approach multipliers differently when the lodestar method is used as a crosscheck than when using the lodestar in fee-shifting cases. In fee-shifting cases, "the question of whether a multiplier is permitted is a question of statutory interpretation" and "courts are somewhat hesitant to make the shift broader than is necessary" since the adversary pays the fee. William B. Rubenstein, 5 Newberg on Class Actions § 15:91 (5th ed. Nov. 2018 update). "[I]n common fund cases, courts that employ a pure lodestar method are not bound by the Supreme Court's rulings that limit multiplied lodestars in the fee-shifting context." *Id.*; *see also Vizcaino*, 290 F.3d at 1051 ("The bar against risk multipliers in statutory fee cases does not apply to common fund cases" and "'courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.'" (citation omitted)).

In the Ninth Circuit, multipliers "ranging from one to four are frequently awarded." *Vizcaino*, 290 F.3d at 1051 n.6. The Ninth Circuit collected dozens of class action lodestars and found that in 83% of the cases the lodestar was between 1.0 and 4.0. *Id.* Courts find higher multipliers appropriate when using the lodestar method as a crosscheck for an award based on the percentage method. *See, e.g., Steiner v. Am. Broad Co., Inc.*, 248 F. App'x 780, 783 (9th Cir. 2007) (finding a multiplier of approximately 6.85 to be "well within the range of multipliers that courts have allowed" when crosschecking a fee based on a percentage of the fund); *Beaver,* 2017 WL 4310707, at *13 ("The one-third fee Class Counsel seeks reflects a multiplier of 2.89 on the lodestar which is reasonable for a complex class action case"); *Couser*, 125 F.Supp.3d at 1049 (finding a 2.80 multiplier reasonable in a TCPA case); *Smith*, 2013 WL 163293, at

*5 (1.5 lodestar multiplier on crosscheck of fee award equal to 33 1/3% of cash payment but only 7.5% of total settlement value); *Pan v. Qualcomm Inc.*, No. 16-CV-01885-JLS-DHB, 2017 WL 3252212, at *13 (S.D. Cal. July 31, 2017) (finding a multiplier of 3.5 to be reasonable for a fee equal to 24.6% of the settlement value); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298-99 (N.D. Cal. 1995) (finding a multiplier of 3.6 was "well within the acceptable range").

Courts may consider the following factors when assessing the reasonableness of a multiplier: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also Vizcaino*, 290 F.3d at 1051 (noting that the district court found a 3.65 multiplier to be reasonable after considering the factors in *Kerr*).

Application of these factors confirms that a modest multiplier of 1.318 is reasonable and appropriate. Class Counsel took the case on a contingent basis and to the preclusion of other work. They were able to achieve a favorable settlement for the Settlement Class that is comparable to other similar settlements (and superior to many) despite the challenges presented by this litigation. Class Counsel have substantial experience in litigating TCPA class actions and have earned reputations for skilled representation of victims of TCPA violations. Finally, Class Counsel will continue to respond to Settlement Class

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

1   Members' calls and work with the settlement administrator through final

2   approval and distribution of the settlement funds.

3   **B.    Class Counsel's litigation costs were necessarily and reasonably incurred.**

4        Rule 23(h) allows courts to award costs authorized by law or the parties'

5   agreement. Attorneys who create a common fund are entitled to

6   reimbursement of their out-of-pocket expenses so long as they are reasonable,

7   necessary and directly related to the work performed on behalf of the class.

8   *Vincent v. Hughes Air W.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also In re*

9   *Immune Response Sec. Litig.,* 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007)

10  (approving "reimbursements for 1) meals, hotels, and transportation; 2)

11  photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and

12  overnight delivery; 6) online legal research; 7) class action notices; 8) experts,

13  consultants, and investigators; and 9) mediation fees").

14       Class Counsel have provided the Court with charts that list their litigation

15  costs by category. These costs, much of which were incurred retaining experts to

16  perform the analyses essential to proving Cavalry's liability and damages, total

17  $85,349.64. McEntee Decl. ¶ 19; Lemberg Decl. ¶ 24.

18  **C.    Plaintiffs request incentive awards of $10,000.**

19       Class representatives are eligible for reasonable service awards. *Staton*,

20  327 F.3d at 977. The Ninth Circuit has explained that service awards that are

21  "intended to compensate class representatives for work undertaken on behalf of

22  a class 'are fairly typical in class action cases.'" *In re Online DVD*, 779 F.3d at 943

23  (quoting *Rodriguez v. W. Publishing*, 563 F.3d 948, 958-59 (9th Cir. 2009)). The

24  awards recognize the effort class representatives expend and the financial or

25  reputational risk they undertake in bringing the case, and to recognize their

26

27

28                                          PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS,
                                                    AND INCENTIVE AWARDS
                              - 21 -            13-CV-00307-JAH (WVG)

willingness to act as private attorneys general. *W. Publishing*, 563 F.3d at 958-59. The factors courts consider include the class representative's actions to protect the interests of the class, the degree to which the class has benefitted from those actions, the time and effort the class representative expended in pursuing the litigation, and any risk the class representative assumed. *Staton*, 327 F.3d at 977; *see also Smith,* 2013 WL 163293, at *6 (addressing incentive award criteria).

Unlike unnamed Settlement Class Members, who are passive beneficiaries of the representatives' efforts on their behalf, named class representatives agree to be the subject of discovery, including making themselves available as witnesses at deposition and trial, and subject themselves to other obligations of named parties. Service payments, which serve as premiums in addition to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. In this case, Plaintiffs together protected the interests of the Settlement Class for more than six years. Each actively assisted in the prosecution of this case. Mr. Horton worked closely with counsel to respond to Cavalry's interrogatories, requests for production, and requests for admission. Declaration of Cory Horton ¶ 3. He sat for a nearly full-day deposition. *Id*. ¶ 4. He endured a counterclaim from Cavalry, which he successfully defeated. *Id*. ¶ 5. He rejected an offer of judgment in favor of reaching a classwide resolution. *Id*. ¶ 6. And he consulted with counsel throughout the settlement process to ensure that an excellent result was reached for all Settlement Class Members. *Id*. ¶ 7. Mr. Krejci has been an exemplary class representative. Lemberg Decl. ¶ 27. He aided in counsel's investigation and provided documentation and records as part of the investigative process. *Id.* He kept abreast of events, approved participation in the settlement conferences before Judge Papas, and made

himself available to attend the same. *Id*. Further, while his action was stayed for years, he maintained committed to pursuing class relief rather than an individual resolution. *Id.*

Incentive awards of $10,000 are reasonable and in line with awards approved by federal courts in California. *See, e.g., Beaver*, 2017 WL 4310707, at *8 (approving $50,000 service awards); *Smith*, 2013 WL 163293, at *6 (approving $15,000 incentive awards to each of three class representatives); *del Toro Lopez v. Uber Techs., Inc.*, No. 17-cv-06255-YGR, 2018 WL 5982506, at *3, 18 (N.D. Cal. Nov. 14, 2018) (approving service awards ranging from $30,000 to $50,000); *In re Nat'l Collegiate Athletic Ass'n*, No. 4:14-md-2541-CW, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017) (awarding $20,000 incentive awards to each of four class representatives and collecting cases approving similar awards); *Lofton*, 2016 WL 7985253, at *2 (awarding $15,000 incentive fee in TCPA class action); *Contreras v. Performance Food Grp., Inc.*, No. 4:14-CV-03380-PJH, 2016 WL 9138157, at *1 (N.D. Cal. May 4, 2016) (approving service award "in the amount of $10,000.00, for the initiation of this action, the substantial benefit conferred upon the Class, and the risks taken by stepping forward and prosecuting this action"). Thus, $10,000 incentive awards are reasonable here.

## V. CONCLUSION

Class Counsel request that the Court approve a fee award of $2,000,000, which represents 8% of the total settlement value and 32.5% of the Cash Fund, and reimbursement of $85,349.64 in litigation costs. Plaintiffs request incentive awards of $10,000 each in recognition of their representation of the Settlement Class in this case.

RESPECTFULLY SUBMITTED AND DATED this 29th day of June, 2020.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Adrienne D. McEntee, *Pro Hac Vice*
    Beth E. Terrell, CSB #178181
    Email: bterrell@terrellmarshall.com
    Adrienne D. McEntee, *Admitted Pro Hac Vice*
    Email: amcentee@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103-8869
    Telephone: (206) 816-6603

    James C. Shah
    Email: jshah@sfmslaw.com
    SHEPHERD, FINKELMAN, MILLER
      & SHAH, LLP
    1845 Walnut Street, Suite 806
    Philadelphia, Pennsylvania 19103
    Telephone: (610) 891-9880
    Facsimile: (866) 300-7367

    Chiharu Sekino, SBN #306589
    Email: csekino@sfmslaw.com
    SHEPHERD, FINKELMAN, MILLER
      & SHAH, LLP
    1230 Columbia Street, Suite 1140
    San Diego, California 92101
    Telephone: (619) 235-2416
    Facsimile: (866) 300-7367

    *Attorneys for Plaintiff Cory Horton*

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS,
AND INCENTIVE AWARDS
- 24 -      13-CV-00307-JAH (WVG)

1      LEMBERG LAW, LLC

2

3      By:  /s/ Trinette G. Kent, SBN#222020
4          Trinette G. Kent, SBN #222020
           E-mail: tkent@lemberglaw.com
5          3219 East Camelback Road, Suite 588
           Phoenix, Arizona 85018
6          Telephone: (480) 247-9644
7          Facsimile: (480) 717-4781
           E-mail: tkent@lemberglaw.com
8

9          Sergei Lemberg, *Admitted Pro Hac Vice*
10         E-mail: slemberg@lemberglaw.com
           43 Danbury Road
11         Wilton, Connecticut 06897
           Telephone: (480) 247-9644
12         Facsimile: (203) 653-3424
13

14     *Attorneys for Kevin Krejci*

15

16

17

18

19

20

21

22

23

24

25

26

27     PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS,
28                       AND INCENTIVE AWARDS
                - 25 -          13-CV-00307-JAH (WVG)

## CERTIFICATE OF SERVICE

I, Adrienne D. McEntee, hereby certify that on June 29, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Tomio B. Narita, CSB #156576
Email:  tnarita@snllp.com
Jeffrey A. Topor, CSB #195545
Email:  jtopor@snllp.com
SIMMONDS & NARITA LLP
44 Montgomery Street, Suite 3010
San Francisco, California 94104-4816
Telephone: (415) 283-1000
Facsimile: (415) 352-2625

*Attorneys for Defendant*

DATED this 29th day of June, 2020.

TERRELL MARSHALL LAW GROUP PLLC


By:  /s/ Adrienne D. McEntee, *Pro Hac Vice*
    Adrienne D. McEntee, *Admitted Pro Hac Vice*
    Email:  amcentee@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103-8869
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

*Attorneys for Plaintiff Cory Horton*

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS
- 26 -          13-CV-00307-JAH (WVG)